AMELIA L. SPIES, as Executrix of FRANCIS SPIES, Deceased, Respondent, *v.* NATIONAL CITY BANK, Appellant.

1. APPEAL — QUESTION OF FACT. A finding as to the law of a foreign state upon a given subject is a finding of fact, and if unanimously approved by the Appellate Division is conclusive upon the Court of Appeals.

2. BILLS, NOTES AND CHECKS — INDORSEMENT. The holder of a promissory note who so deals with the maker that he becomes discharged from all liability thereon as against subsequent indorsers, cannot enforce the contract of indorsement.

3. WHEN ACTS OF THE HOLDER DEPRIVING INDORSER OF REMEDY AGAINST THE MAKER DISCHARGE INDORSER. A promissory note executed in another state but indorsed in this state, cannot be enforced against the indorser by the holder where he has recovered judgment thereon against the maker in the foreign state and without the consent of the indorser has sold the judgment and transferred it to a third party for the benefit of the maker, and caused or permitted an order to be entered in the action declaring that the transferee " be subrogated to all the plaintiff's rights, claims and demands in and to the judgment therein against the defendant," although at the time of the transfer the holder expressly reserved all of his rights and claims against the indorser, to which reservation both the transferee and the defendant assented, where the effect of the transaction was by the law of the foreign state to relieve the maker from all liability on the note; the fact that the holder reserved his rights does not entitle him to enforce the note against the indorser, since by his own act he deprived the latter of his remedy against the maker, and by the laws of this state, by which the contract of indorsement is governed, the indorser is discharged from all liability on the note.

*Spies* v. *Nat. City Bank*, 68 App. Div. 70, affirmed.

(Argued February 18, 1903; decided March 24, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 28, 1902, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John A. Garver* for appellant. The law of New York controls. Indorsement is an independent contract, governed

by the law of the place where made or where it takes effect. (*Dyke* v. *E. Ry. Co.*, 45 N. Y. 113 ; *Tilden* v. *Blair*, 21 Wall. 241 ; 4 Am. & Eng. Ency. of Law [2d ed.], 477 ; Story on Confl. of Laws, § 314 ; Daniel on Neg. Inst. §§ 867, 868, 899 ; *Aymar* v. *Sheldon*, 12 Wend. 439 ; *Allen* v. *Merchants' Bank*, 22 Wend. 215 ; *Cook* v. *Litchfield*, 9 N. Y. 279 ; *Musson* v. *Lake*, 4 How. [U. S.] 262 ; *Trabue* v. *Short*, 18 La. Ann. 257 ; *Weil* v. *Lange*, 6 Daly, 549 ; *A. Bank* v. *P. Bank*, 41 Barb. 599 ; *Lee* v. *Selleck*, 32 Barb. 522.) The reservation was valid under the laws of New York. (*Stewart* v. *Eden*, 2 Caines, 121 ; *Morgan* v. *Smith*, 70 N. Y. 537 ; *Calvo* v. *Davies*, 73 N. Y. 211 ; *Nat. Bank of Newburgh* v. *Bigler*, 83 N. Y. 51 ; *Palmer* v. *Purdy*, 83 N. Y. 144 ; *Hubbell* v. *Carpenter*, 5 N. Y. 171 ; *Booth* v. *F., etc., Bank*, 74 N. Y. 228.) By the law of New York the bank could reserve its rights against the indorser. It was not necessary that it should make such reservation within the state of New York. (*Pinney* v. *Nelson*, 183 U. S. 144 ; *King* v. *Sarria*, 69 N. Y. 24.) The note was protested at its maturity. It was the duty of the indorser at that time to pay the note, and, upon the protest of the note, the indorser ceased to be a mere surety and became liable as principal for the amount due. (*F. Nat. Bank* v. *Wood*, 71 N. Y. 405 ; *G. A. Bank* v. *N. C. Co.*, 13 App. Div. 450.)

*James Harold Warner* for respondent. If the holder of a note does an act which destroys the remedy of an indorser against the maker, or, through inaction, produces the same result, the indorser is discharged. (*Shutts* v. *Fingar*, 100 N. Y. 543 ; *Pitts* v. *Congdon*, 2 N. Y. 345 ; *Brown* v. *Williams*, 4 Wend. 360.)

PARKER, Ch. J. The Appellate Division having unanimously affirmed the judgment entered on the report of the referee, the legal effect thereof was to conclusively establish the findings of fact made by the referee, which are as follows :

" In and prior to April, 1893, Francis Spies, the plaintiff's testator, was doing business in the City of New York in the name of Marcial and Co. At his request in April, 1893, at New York City, the defendant discounted for him a note for $4,786.62 made in New Orleans by R. M. Ong to the order of Marcial and Co., dated the 11th day of April, 1893, and payable in four months thereafter. Spies indorsed the note in the name of Marcial and Co. to the defendant. At that time the defendant held certain railroad bonds which Spies had deposited with it as security for the indebtedness then due to it from him and as security also for ' any other note or claim ' the defendant might have against him. The defendant discounted the above-mentioned note, relying upon the said securities. The note was not paid when due and was duly protested and due notice was given to the plaintiff — Spies, the indorser, having in the meantime died. In February, 1894, this defendant recovered judgment upon the note against Ong, the maker, in the Civil District Court for the Parish of Orleans, in Louisiana, where Ong resided. A few months later the defendant sold and transferred the said judgment to Alfred Hiller for fifty per cent. of its face value. An order of subrogation was entered in the action in which the said judgment had been recovered, which declared that Hiller ' be subrogated to all the plaintiff's rights, claims and demands in and to the judgment therein against the defendant R. M. Ong.' In this transaction, all of which took place in Louisiana, Hiller represented Ong, and acted in his behalf and for his benefit, and Ong became the owner of the judgment. When this defendant sold and assigned the said judgment to Hiller it was with an express reservation of all of the defendant's rights and claims against the indorsers of the note, to which reservation both Hiller and Ong assented. In or about January, 1899, the defendant sold the railroad bonds above referred to, and applied a part of the proceeds to the payment of the sum due to the defendant on the indebtedness for which the said bonds had been originally pledged by Spies. The balance of said proceeds, amounting to $1,469.06, the defendant applied on

account of his alleged claim against Spies as indorser of the Ong note.

"By the law, both of Louisiana and New York, the effect of the said transaction between this defendant and Hiller and Ong was to release Ong from all liability upon the note as maker. Such release operated to discharge the liability of Spies (or Marcial and Co.), the indorser. The liability of the indorser was not preserved or continued by the reservation by the defendant of its rights and claims against the indorser when it sold and assigned the judgment.

"The plaintiff is the duly qualified executor of the said Francis Spies, and, before the commencement of this action, demanded of defendant the said sum of $1,469.06, which the defendant refused to pay."

While the note was a Louisiana contract, having been made in that state by a resident thereof, payable at a bank therein, the contract of indorsement was an independent contract governed by the law of the state where it was made and took effect, for in the case of every negotiable instrument there are as many separate contracts as there are indorsements, each being governed by the law of the place where made, unless the intention is to negotiate the instrument elsewhere. (Story on Conflict of Laws, § 314; Daniel on Negotiable Instruments, §§ 867, 868, 899; *Aymar* v. *Sheldon*, 12 Wend. 439; *Allen* v. *Merchants' Bank*, 22 Wend. 215; *Cook* v. *Litchfield*, 9 N. Y. 279, 290.) The note was made payable to the order of Marcial and Co., under which name the plaintiff's testator did business in the city of New York, and it was by him duly indorsed to the defendant, at its banking house in New York, before maturity. The contract of indorsement was, therefore, a New York contract, and the defendant having presented the note for payment when and where it was made payable, and, upon the refusal to pay, having caused the same to be duly protested for non-payment and notice thereof to be given to the plaintiff, it thereupon became entitled to enforce payment, and still retains that right unless it has done, or

15

omitted to do, some act which, under the law of this state, has destroyed that right.

While the holder of a note may enforce collection from either the maker or indorser, or both, he must take care not to impair the remedy of the indorser against the maker, for to the extent that he destroys the indorser's claim against the maker he releases his claim against the indorser. (*Shutts* v. *Fingar*, 100 N. Y. 539; *Pitts* v. *Congdon*, 2 N. Y. 352; *Brown* v. *Williams*, 4 Wend. 360.)

In *Shutts'* case it is said, in the course of a very full and careful discussion of the general subject, that an indorser who pays a note "is entitled to demand its possession from the creditor with the right of subrogation to all securities and remedies possessed by him against the prior parties thereon unimpaired by any act or laches of such creditor."

In *Pitts'* case it is held that "he" (the holder) "cannot discharge the party primarily liable and then sue the indorser, because the latter would in this way be deprived of his remedy over."

In *Brown's* case the court said, "if the holder releases the principal debtor, he ought not to recover against the indorser, for, by releasing the debt, he discharged the principal from all liability upon the note to the indorser as well as himself."

The principle established by these cases is that if the holder of a note so deals with the maker that he becomes discharged from all liability thereon as against subsequent indorsers, then the indorsers cannot be compelled to pay it.

Now, the plaintiff's claim throughout this litigation is that the defendant cannot enforce the contract of indorsement because it has destroyed the plaintiff's remedy against Ong, the maker of the note.

Turning to the findings of fact, for the purpose of learning whether this contention be well founded, we find that the defendant recovered a judgment against the maker of the note, Ong, in the state of Louisiana, and later sold and assigned the judgment to one Hiller for fifty per cent of its face value, and caused or permitted an order to be entered in

the action which declared that Hiller " be subrogated to all the plaintiff's (defendant here) rights, claims and demands in and to the judgment therein against the defendant R. M. Ong." A reservation, not mentioned in the assignment or order of subrogation of the defendant's rights against the indorser was also made by the defendant with the assent of both Hiller and Ong.

The next inquiry naturally is, was the legal effect of this action to release Ong from all liability on the note to the indorser in the event that he should pay voluntarily, or otherwise, the fifty per cent of the note uncollected by the defendant?

The answer must of course be furnished by the law of the state of Louisiana, because Ong's contract, as maker of the note, was a Louisiana contract, and the contract of assignment and such reservation as was attempted to be made was made within and is governed by the law of that state. And the answer for the purposes of this action could only be obtained by the introduction of evidence showing what the law of Louisiana is so far as it relates to that question, for what may be the foreign law upon a given subject presents a question of fact, not a question of law (*Genet* v. *D. & H. C. Co.*, 163 N. Y. 175, 177), and must be both proved and found like any other question of fact.

It follows necessarily that when found as a fact by a trial court or referee the effect of a unanimous affirmance of a judgment based in part thereon is to compel this court to treat such finding precisely as it does any other finding of fact, namely, as importing absolute verity.

Again turning to the findings, we find it stated that by the law of Louisiana the effect of the said transaction between this defendant and Hiller and Ong was to relieve Ong from all liability upon the note as maker. The plaintiff's remedy as against the maker has, therefore, been swept away by the affirmative action of this defendant, and, hence, under the general rule of law that obtains in such case in this state, the defendant must be deemed to have lost the right that

it once had to collect the note or any part of it from the plaintiff.

The learned counsel for the appellant insists that even if it be true that the legal effect of the assignment of the judgment and the entry of the order of subrogation operated to discharge the maker from all liability on the note, nevertheless the effect of the holder's reservation of his rights against the indorser permits recovery from him on the note under the law of this state which governs, as we have seen, the contract of indorsement.

The legal effect of such a contention necessarily is, that there exists in this state an exception to the general rule, that a holder who so acts as to discharge a maker from all liability on a note releases all subsequent indorsers from liability thereon, and is to be found in a case where, at the time of releasing the maker, the holder expressly reserves all rights against the indorsers.

If his contention be well founded the exception would so operate as to destroy in large measure the value of the general rule, which is well grounded in reason as well as authority, for in many cases the holder could deprive the indorser of his remedy over against the maker and still pursue the holder's remedy against the indorser by a simple agreement with the maker that the holder's rights against the indorser should be reserved.

He cites in support of his position the following cases in this court: *Morgan* v. *Smith* (70 N. Y. 537); *Calvo* v. *Davies* (73 N. Y. 211); *Palmer* v. *Purdy* (83 N. Y. 144).

In *Morgan* v. *Smith* no such question was involved. The defendants were co-sureties upon a lease, and after the lessees had taken possession under the lease they entered into an agreement with the lessor that the latter should rent the premises for them at their risk, crediting to them any receipts for rent, with a condition that the agreement should not impair or alter the relations of the parties, the covenants of the lease, or the security for the rent. It was held that the agreement, even without the condition, was no more in effect

than a consent that the lessees might underlet and that under the condition the rights of the sureties were in no wise affected. The court concluded the opinion in these words: " The delivery and reception of the key was not a surrender or taking possession of the premises, but an intrusting to the plaintiff of the control of them for the purpose of letting them in behalf of the lessees, they all the while remaining tenants and liable for the rent according to the terms of the lease. We do not think that this point can be sustained."

*Calvo* v. *Davies* was an action to enforce a mortgage upon premises subsequently sold to a grantee, who in his deed assumed its payment and later entered into an agreement with the mortgagee to extend the time of payment without the consent of his grantor. Held, that the effect of the agreement was to discharge the grantor and mortgagor from liability for the mortgage debt.

In *Palmer* v. *Purdy*, of the four tenants, all liable for rent to the plaintiff, two left the firm after having made an agreement with the other two that they should assume the payment of rent thereafter to accrue, but the fact of this agreement was not fairly communicated to the landlord, so this court held that he was not called upon to treat the outgoing members as sureties, but could legally deal with them all as principal debtors. So the defense that by the acceptance of the notes of the two members continuing in possession of the premises the landlord had extended the time of payment of the rent, was brushed aside, and then the court added, further, that even if it accorded to them the rights of sureties the defendant's acceptance of the notes, upon an express reservation of his rights and remedies as against them prevented it from operating as an absolute, and made it only a " qualified and conditional suspension of the right of action;  *  *  * it is to be treated in effect as if it was made in express terms subject to the consent of the surety, and the surety is not thereby discharged."

That rule has never been applied to an indorser on a promissory note by this court, and never can be, when, as in

this case, there is to be found in the facts and circumstances surrounding the transaction no opportunity to treat the release of the maker as having been made subject to the consent of the indorser.

The judgment should be affirmed, with costs.

GRAY, O'BRIEN, BARTLETT, HAIGHT, VANN and CULLEN, JJ., concur.

Judgment affirmed.