144

## In re SHERK.
### No. 64662.

United States District Court,
N. D. Ohio, E. D.
Oct. 9, 1952.

The following is the opinion of William B. Woods, Referee in Bankruptcy:

To the Honorable Judges of the United States District Court, for the Northern District of Ohio, Eastern Division, sitting in Bankruptcy:

That in the course of the proceedings, Hugh Wells, Trustee of this bankrupt, on April 9, 1952, filed his petition for Reconsideration and Rejection of two claims allowed on October 24, 1947, of The Second National Bank of Bucyrus, Ohio, for $7853.79 and $13,187.20. Upon hearing had an order was entered vacating the allowance of said claims and on reconsideration thereof the claims were rejected and disallowed by order dated July 28, 1952.

Thereafter, being aggrieved thereat, The Second National Bank of Bucyrus, Ohio, filed its Petition for Review of said order of the Bankruptcy Court.

### Statement of the Case.

The two claims were allowed while Charles W. Sickafoose was Trustee, and at a time when there were no funds in the estate available to pay any creditors. After his resignation as Trustee, Hugh Wells was elected as his successor. After the new trustee was elected, assets were discovered and after suits in this District Court, the Trustee has recovered some $46,000 because of preferences and fraudulent transfers, so that from this fund now in his custody there should be dividends to general creditors, dependent upon the allowance of valid claims against the estate.

Further, the new trustee represents to the Court that, since the date of the allowance of said claims, this trustee came into the knowledge and possession of facts, which his predecessor in office did not have, and that by reason thereof, the trustee now believes that the said two claims should be reexamined and disallowed.

The trustee represents to the Court that the fund recovered and now held by him was recovered from The Second National Bank of Bucyrus, Ohio, and another bank of Bucyrus by reason of voidable preferences and fraudulent transfer of assets to said banks, which they refused to surrender voluntarily and refused to pay to the trustee until the law suits were concluded in this District Court, and judgments rendered in favor of the trustee.

The trustee urges that said claims should be rejected, because the bank permitted said bankrupt to engage in a fraudulent scheme of check kiting and exchanging checks, thereby enabling bankrupt to obtain a large credit by falsely manipulating his checking account, so as to mislead the public, which said bank knew, or in the exercise of ordinary business skill and knowledge it should have known; that said bankrupt and his father-in-law, Elger J. Pfleiderer, were engaged in fraudulent check exchange together with other parties; that said bank at all times refused to surrender preferences and credits, which it obtained by virtue of its position from the bankrupt, and it has thus endeavored to obtain a favored position relative to the property of the estate of bankrupt; and that in law and equity it is unjust to permit said bank to share in any of the money so recovered and paid by said bank.

Until the hearing on May 9, 1952, neither the Trustee nor the Referee in Bankruptcy had any knowledge of the fact that the bank had received payment of the $7853.79 claim, nor any knowledge of the fact that the bank had received $2000 to apply on the other claim of $13,187.20. Thus it appears that had not the trustee been alert, these claims of the bank would have been allowed in full and the bank would have received a dividend on nearly $21,000 of claims, whereas, in fact, the bank now admits it only has a claim at this time for some $11,000.

### Findings of Fact.

(1) That after the adjudication of Edward Sherk as a Bankrupt, at the first meeting of creditors Charles W. Sickafoose of Canton, Ohio, was elected Trustee and during his service of several months several hearings were had in an effort to uncover assets of the bankrupt.

(2) That The Second National Bank of Bucyrus, Ohio, filed two Proofs of Claim against the bankrupt, one being for $7,853.79 and the other for $13,187.20. The smaller of the two was based upon the fact that it claimed that the bankrupt had deposited in its bank a check for $7,853.79 drawn on Kirchner Meat Packers, Findlay, Ohio, and payable to the order of Ed Sherk, which check was deposited to the credit of Sherk and that credit had been extended to Sherk for that amount. This check was returned or payment stopped. The second or larger Proof of Claim was based upon two checks drawn by Ralph Deters upon The Citizens State Bank, of Fairmount, Indiana, payable to the order of Edward Sherk, one check being drawn on January 8, 1947, for $8,843.13 and the second dated January 24, 1947, and being in the sum of $4,344.07. Without any hearing these claims were allowed on September 13, 1948, at which time there were no assets in the hands of the Trustee and little prospects for recovery of any assets.

(3) That thereafter said Sickafoose resigned as Trustee reporting to the court

that he was unable to collect any assets in the estate; and the creditors in meeting held December 4, 1948 elected as his successor Trustee, Hugh Wells, of Cleveland, Ohio, who is now so serving.

(4) That upon his election as the new Trustee, Hugh Wells selected counsel who had not represented his predecessor, and several suits were commenced in the United States District Court, Northern District of Ohio, Eastern Division, to recover assets claimed by the Trustee to belong to the bankrupt estate. Part of these suits were against the Second National Bank of Bucyrus, Ohio. The suits were based upon the claim that The Second National Bank had assets of the bankrupt which were obtained as voidable preferences, as fraudulent transfers and as transfers made to defeat the claims of creditors. The Trustee was successful in recovering approximately $45,000. of money from the Second National Bank of Bucyrus and The Farmers and Citizens Bank of Bucyrus, Ohio. That money was paid into the hands of the Trustee and it is in that money that The Second National Bank seeks to participate as a creditor. Complete history of these cases may be found in the United States District Court, Northern District of Ohio, Eastern Division in cases numbered 26714 and 26715.

(5) That upon the recovery of the money above mentioned the Trustee, Hugh Wells, filed a Petition for Reconsideration of the allowed claims of The Second National Bank of Bucyrus and asked for a rejection of said claims. In this Petition the Trustee alleged that he discovered assets after the allowance of the claims by the predecessor Trustee and recovered such assets and that he came into possession of and knowledge of facts which his predecessor in office did not have and that the claims of The Second National Bank should not be allowed to participate therein. He further alleged that The Second National Bank along with others had participated in a fraudulent scheme of check kiting and check exchanging by permitting the bankrupt to engage in that kind of a scheme along with the bankrupt's father-in-law and others.

(6) That on May 9, 1952, this Petition for Reconsideration of the Claim of The Second National Bank and for a rejection thereof was heard by the Court. The Court found the allegations of the Petition true and ordered rejection of the claims. At this hearing the question was raised as to whether or not the Trustee had been alert and whether or not said Trustee should be allowed to raise the question he sought to have determined.

(7) That this Court finds that Charles W. Sickafoose, Predecessor Trustee, had no knowledge of the method used by The Second National Bank in obtaining preferences and fraudulent transfers; that it was the duty of the present Trustee to commence the actions which he filed and it was the duty of the Trustee to oppose the allowance of the claims; that the present Trustee raised the issue of the rejection of the claims of The Second National Bank as soon as same could be done and that therefore said Trustee is not barred of his rights to raise the question of the validity of the claims; and the Court further finds that the Trustee Hugh Wells recovered funds by virtue of suits above mentioned in the United States District Court, Northern District of Ohio, Eastern Division and that said recovery was made against the defendants on the ground of fraudulent transfers and voidable preferences and with intent to defraud, delay and hinder creditors.

(8) That this court finds that up until the hearing on May 9, 1952, that the Referee and the Trustee had no knowledge that The Second National Bank had been paid in full on its first claim of $7,853.79 and that $2,000 had been paid to it to apply on the larger claim leaving the total amount of the claims on the part of the Bank at $11,187.20; and that no one had reported that fact to the Trustee nor the Referee, or that the $7,853.79 claim has been wholly paid.

(9) That the $2,000 credit on the larger claim comes about by reason of a settlement which The Second National Bank made with Deter, maker of the checks and arose by virtue of a law suit filed in the State of Indiana by the Bank against Deter,

which the Trustee did not participate therein and had no knowledge of the settlement and did not approve it. Terms of the settlement of the claim are attached to the record and marked "Exhibit B" on the part of the Bank; and the Court further finds that had the Trustee not filed the objections, that distribution of the pro rata share claimed by the said Bank would have been made as the larger sum allowed on September 13, 1948, rather than upon the amount of $11,187.20 which the Bank itself admits is the only amount now owing to it.

(10) That the Court further finds that at the hearing in Bucyrus on May 9, 1952, that there was no showing on the part of The Second National Bank that Deter, the defendant in the law suit in Indiana, and maker of the check was insolvent or uncollectible. The Court finds that he was primarily liable for the claim sued upon by the Bank. Furthermore, the Court finds that there is attached to the record a copy of the ledger pertaining to the account of Edward Sherk with The Second National Bank of Bucyrus showing transactions the month prior to his bankruptcy. Furthermore, the Court finds that most of the transactions shown on the ledger were exchanged checks with the father-in-law, Elger Pfleiderer, which checks were drawn on The Farmers and Citizens Bank, Bucyrus, Ohio, the creditor having knowledge of same not only by virtue of the transactions shown on the ledger sheet which is an exhibit in this hearing, but by virtue of bankrupt's testimony at various examinations conducted before the Referee.

#### Memorandum.

At the outset counsel for the bankrupt's creditor urges that the relief sought by the successor trustee be denied, since such relief has not been diligently sought. To this claim the short answer is found in the provisions of the Bankruptcy Act, Sec. 2, sub. a(2), 11 U.S.C.A. § 11, sub. a(2), which provides that the Bankruptcy Court has power to "Allow claims, disallow claims, reconsider allowed or disallowed claims, and allow or disallow them against bankrupt estates"; also in the Bankruptcy Act on proof and allowance of claims, Sec. 57, sub. k, 11 U.S.C.A. § 93, sub. k provides that "Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part according to the equities of the case".

So on this discovery of and establishment of the facts in the said law suits in the District Court, unknown to the former trustee so he did not object to said claims and permitted their allowance, the new trustee is clearly within his rights, if not in fact duty bound because of his office to ask for a reconsideration and rejection of said bank claims.

Coming to consider the facts, it appears, until the hearing on May 9, 1952, the Referee and trustee had no knowledge that The Second National Bank had been paid in full the $7853.79 of its first claim and $2,000 to apply on the larger claim. At the hearing, by statement of bank counsel in open court, the claim of the bank is now reduced for an allowance of $11,187.20 (Transcript Pg. 28–30).

The proof shows that the $13,187.20 claimed, upon which the $2,000 is now credited, is based upon a check (photostatic exhibit attached to proof of claim) given by Ralph Deter to the bankrupt, endorsed by bankrupt and deposited in the bank of this creditor claimant. The bank commenced an action in Indiana against the principal maker of the check and evidence shows that it settled the case by accepting Deter's note for $2,000, and whether it was signed by others, there is no evidence; to secure said note, mortgage was given by Deter and he and the bank entered into a memorandum of settlement (Sherk Ex. B).

The claim of the bank creditor for a present allowance for the claim of $11,-187.20 is resisted by the trustee on two grounds: (1) that the creditor bank has not purged itself of wrongdoing by paying to the trustee the judgment against it in the suits in the District Court; and (2) that, under Ohio General Code, § 8225, by making settlement with Deter, the maker of the check, bankrupt Sherk, who endorsed the check, thereby is discharged from the debt, so that there can be no allowance of the claim in a Bankruptcy Court against the bankrupt estate.

148

Counsel for the bank urges that funds recovered from it by the trustee after suits were loans and preferences involving Faulkner and Pfleiderer, and the two banks, The Farmers & Citizens Bank & Savings Company of Bucyrus and this bank creditor claimant, and Deter, the maker of the check on which the bank creditor relies, were not involved in the suits in the local District Court, and that the Deter check was not involved in the fraud and the judgment which was rendered by the District Court against it.

Counsel for the trustee urges that the bank creditor is barred from asserting this claim by Sec. 57 sub. g, of the Bankruptcy Act, which provides:

"The claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this act, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments, or encumbrances."

The fund now held by the trustee was received by him as a result of the law suits to set aside voidable preferences and transfers on the ground of fraud. The very creditor which is now claiming a share in these proceeds had to be sued in the United States District Court, in order to regain money held by bankrupt, because of preferences and fraudulent transfers. That creditor now seeks to participate in the funds which it withheld. It appears that the purpose of the above section of the Bankruptcy Act is to cause creditors to surrender their position, come into Court with clean hands, so as to act honestly, that it may participate with other creditors. The examination of the various cases and the record of the pleadings in the District Court shows how far this claiming creditor has departed from a fair and equitable course, so far as it has any claim against this bankrupt estate.

Counsel for bank urges in his brief that, having surrendered or returned the amount adjudged against it in the law suits, thereby the bank has purged itself of any wrong doing, intentional or otherwise. To this it may be said that the bank may have purged itself as far as the particular money is concerned, but did not purge itself of the scheme to prefer itself against other creditors and gain an undue advantage. The authorities urged by counsel in behalf of the bankrupt were prior to the Chandler Amendment of 1938 to the Bankruptcy Act.

In another ruling by this Referee in this case, bankrupt's claim for exemptions was denied, on the ground that the fund in the trustee's hands claimed as exempt by bankrupt, arose and was part of the fund recovered by the trustee because of preferences and fraudulent transactions of bankrupt with the two Bucyrus banks. This follows from the Chandler Amendment of 1938 to the Bankruptcy Act, and was so held in Gardner v. Johnson, 9 Cir., 195 F. 2d 717, a recent bankruptcy case, involving exemptions under the California statute.

It would appear that a like ruling should apply to the claim here of The Second National Bank, since that bank has been found guilty of participation in preferences and fraudulent transactions with the bankrupt, and has made refund by paying to the trustee the judgment rendered against it in the Federal Court.

The other ground urged against the bank claimant for the denial of the allowance of any claim in this proceeding at this time arises from the fact that the bank has barred itself from any participation in dividends by an allowance of its amended claim, when it released Deter, the maker of the check, on which Sherk, the bankrupt, was an endorser. Sec. 8225 of the Ohio General Code provides as to negotiable instruments:

"When person secondarily liable on, discharged. A person secondarily liable on the instrument is discharged:

"1. By any act which discharges the instrument. * * *

"3. By the discharge of a prior party."

The proof shows that the bank sued Deter in the Indiana Court in 1951 and made a settlement with Deter by taking a note of $2,000 secured by mortgage and entered into a memorandum of settlement (Sherk Ex. B). The Trustee and the Ref-

eree first heard of such suit and settlement on May 9, 1952 at the hearing on this petition to disallow and reject the bank's claims. The Ohio Statute states that a person secondarily liable on a instrument is discharged "By any act which discharges the instrument".

There are many Court interpretations to the effect that any act, even in the absence of statute, which discharges the primary party, discharges the surety. In this situation an endorser in reality is like a surety and Sherk was here an endorser on Deter's check. The bank attempted to avoid this by entering into a memorandum of agreement and calling it a covenant not to sue; and the bank took a new note signed by Deter, which was secured by mortgage on a tractor and trailer. By this act the bank encumbered assets of Deter and gave him additional time and charged him 6% interest. So that in effect the bank really changed the terms of the original agreement and by such act has placed the endorser in a different position than that in which he was originally, and, therefore, released him, and so released the bankrupt estate.

An authority to this effect is found in the early case of Spies v. National City Bank, 1903, 174 N.Y. 222, 66 N.E. 736, 61 L.R.A. 193, wherein Judge Parker of the highest New York Court held that the liability of an endorser of a note cannot be preserved by a reservation on the rights and claims against him by the holder, when he releases a judgment against the maker, upon payment of less than the amount due. The 3d Syllabus is as follows:

"The fact that the holder reserved his rights to enforce the note against the indorser gave him no such power, as by his own act he deprived the latter of his remedy against the maker".

This rule of the New York case was followed in Gholson v. Savin, 1941, 137 Ohio St. 551, 31 N.E.2d 858, 859, 139 A.L.R. 75, where Judge Hart wrote the opinion in a case, which involved settlement of a liquidated claim for less than the amount of such claim, where the 6th Syllabus is as follows:

"While an executory agreement on the part of a creditor to accept in payment and full satisfaction of a liquidated claim a sum less than the amount of such claim, without any additional consideration to support such agreement, * * * yet if such agreement has been executed and settlement made accordingly, or has been made with some benefit or advantage to the creditor, however slight, it will operate as a full discharge of the debt in accordance with the intention of the parties."

This is the second time that this referee has been called upon to vacate orders early entered in this long pending case which came to this referee, as successor of Hon. Paul D. Roach, of Canton, Ohio. Orders to abandon personal property entered on June 6, 1947, and July 1, 1948, were vacated by order of January 28, 1949, to which a Petition to Review was filed, and on May 25, 1949, the findings of this referee was affirmed by Hon. Emmerick B. Freed, of this United States District Court.

Herewith the following are handed up for consideration by Your Honors:

(1) & (2) Trustees' Petition for Reconsideration of Allowed Claims and for Rejection thereof; two (2) claims of the Second National Bank of Bucyrus, Ohio, filed October 24, 1947, and allowed September 13, 1948, attached to Petition.

(3) Transcript of Record (including also testimony Claim for Exemption).

(4) Brief of Hugh Wells Trustee.

(5) Brief of Second National Bank of Bucyrus, Ohio.

(6) Reply Brief of Trustee.

(7) Journal Entry.

(8) Petition to Review.

(9) Trustees' Suggested Findings of Fact and Conclusions of Law.

Hugh Wells, Cleveland, Ohio, trustee.

Harold J. Meredith, Lima, Ohio, for trustee.

Francis R. O'Brien, Willoughby, Ohio, for trustee.

C. Victor Vollrath, Charles F. Schaber, Bucyrus, Ohio, for Second National Bank of Bucyrus, Ohio.

JONES, Chief Judge.

Two claims of the Bank were allowed on October 24, 1947, prior to the present trustee's appointment and also at a time when the prior trustee believed there were no funds in the estate available to pay any creditors. The present trustee, after his election, discovered what he believed were assets belonging to the bankrupt's estate and brought suit against The Second National Bank of Bucyrus, Ohio in the District Court to recover alleged preferences and fraudulent transfers made by the bankrupt to this petitioner Bank. Upon trial, the trustee recovered a judgment of approximately $45,000 against the petitioner and another bank. The Bank seeks to retain its larger claim against the estate, reduced by the sum of $2,000, stated to have been received by it to apply on that claim as originally filed.

Upon full hearing the referee sustained the petition for reconsideration and rejection of the claim of the Bank, and entered an order of rejection and disallowance on July 28, 1952. At a hearing before the referee on May 9, 1952, the smaller claim was withdrawn.

On this review the referee has filed his findings of fact and conclusions of law, together with his memorandum which goes into questions involved in the original filing of the claims and the later rejection.

■ From the facts certified, it seems clear to me that the Bank is in no position successfully to maintain its claim to distribution from the assets so recovered.

When one goes to law to resist recovery of fraudulent transfers he hardly conforms in conduct to the "surrender" contemplated by Section 57 sub. g of the Bankruptcy Act. The payment by the Bank of the judgment obtained in an adversary action by the trustee to recover fraudulent transfers does not rise to the equivalent of a "surrender" of the transferred property within the meaning of the Section of the Bankruptcy Act above mentioned; nor can it be equitably found that the Bank, by the pay-

ment of the judgment recovered in an adversary action, purged itself of its wrongful conduct as a party to the fraudulent transfers.

The referee in his certificate makes reference to the history of the court proceedings brought by the trustee to recover the fraudulent transfers, and, having presided at the trial, the facts as developed there are reasonably well remembered.

■ In respect of the claim for a reserved right in the bankrupt's note obligation, I think the petitioner by its method of disposition of the Indiana suit against Deter (the larger of the two claims), released and discharged the obligation of the bankrupt as an endorser, and consequently no claim now can be made a charge on the assets of the bankrupt's estate.

Under the facts and circumstances as disclosed in the trial before me and the record certified, the petitioner is not entitled either in law or in equity to share with other creditors in the assets recovered by the trustee in his action against the Bank for fraudulent transfers, nor in the matter of the so-called Deter suit and settlement is the petitioner legally qualified to press its claim.

The findings and conclusions of the referee will be approved and adopted, and his order and report confirmed.