[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JULY 9, 1997
The plaintiffs, Robert E. Sherman, Evangeline Sherman, Robert E. and Evangeline Sherman, as trustees of the Robert E. Sherman CT Page 12406 Spray Trust and the Robert E. Sherman Accumulation Trust and Norwich Auto Sales, Inc., (Norwich Auto) commenced this lawsuit on March 2, 1992. In a two count amended complaint dated February 20, 1992, the plaintiffs allege that the defendants, Thomas J. Condon, Kevin W. Condon, Herbert S. Savitt and Michael Cavallaro and Metro Auto Sales, (Metro) entered into an Indenture of Lease commencing on June 28, 1989, and ending on June 28, 1994, pursuant to which the defendants agreed to pay per month: 1)rent of $10,000 plus any additional late fees and interest and 2) taxes of $1,525.74 which is one-twelfth the annual taxes. Count one further alleges that the defendants failed to make these payments from September 1991 until February 1992. Count two alleges that the defendants and Metro promised to pay $110,000, plus interest, to Norwich Auto with an installment of $27,500 due on June 28, 1991. Count two further alleges that the defendants failed to pay the installment of principal and the assessed interest and although demand for payment on the note was made, the entire principal and interest from December 28, 1990, remains unpaid.
On June 23, 1992, the Condons and Savitt (Condon) filed an answer admitting that they entered into an Indenture of Lease but denying that they have failed to pay the rent from September 1991 until February 1992. They also admit that they signed as guarantors a note payable to Norwich Auto in the amount of $110,000 but deny the remaining allegations in count two. Condon also asserted two special defenses: 1) the defendants are entitled to set-off against the plaintiffs' claim for all payments received; and 2) the defendants are excused from performance of its obligations due to the plaintiffs' breach of contract. (Condon alleges that the plaintiffs' actions arise as a result of the defendants' purchase of a business owned by the plaintiff, pursuant to a written contract.) On June 23, 1992, Cavallaro filed an answer to the amended complaint admitting that he entered into an Indenture of Lease but denying that he has failed to pay the rent from September 1991 until February 1992. He also admits that he signed as guarantor a note payable to Norwich Auto in the amount of $110,000 but denies the remaining allegations in count two. He also asserted, by way of special defenses that: 1) he is entitled to set-off against the plaintiffs' claim for all payments received; and 2) the defendants are excused from performance of their obligations due to the plaintiffs' breach of contract.
On February 14, 1996, the parties entered into a stipulation CT Page 12407 of judgment and covenant not to execute (the judgment). The judgment entered in favor of the plaintiffs in the amount of $375,000 plus interest. The plaintiffs, their successors and assigns, agreed not to execute on the judgment against Condon, "unless0[Condon] is in default of the terms and conditions listed in paragraph [three] of [the judgment]." (Emphasis provided.) Pursuant to the judgment Condon and Cavallaro agree to pay $281,250 plus interest in the following manner: 1) $10,000 on or before July 1, 1996; 2) $1,500 per month, beginning on August 1, 1996, and every month thereafter, until September 1, 2003, at which time all principal and interest shall be due. If payment is not made within ten days of the due date Condon and Cavallaro will be in default. The judgment further provides that in the event of default the entire unpaid amount of the judgment shall be due and payable and the plaintiffs and their assigns may enforce the judgment in accordance with the law. The judgment also provides that it may not be assigned without the reference to the "Covenant Not to Execute." The judgment also provides that: "Simultaneous with the execution of this Stipulation, [Cavallaro] has executed and delivered a Release to [Condon]."
The release, dated February 14, 1996, provides that Cavallaro, his heirs, executors and administrators, have "remised, released and forever discharged . . . [Condon] . . . and all manner of actions . . . including, inter alia. any and all claims for breach of contract, negligence, and violation of duty; which against [Condon] he ever had, now have . . . shall or may have . . . whatsoever from the beginning of the world to the day of these presents, except for: 1) The obligation of [Condon] to pay [the plaintiffs] the sum of $281,250 . . . in accordance with the terms of a stipulated judgment and covenant not to execute . . . 2) A claim for indemnification and/or contribution from [Condon] with respect to a judgment rendered against [Cavallaro] in favor of Chrysler Credit Corporation . . ." (Defendants' Exhibit D.)[1] The release does not contain the covenant not to execute as provided in the judgment.
On February 27, 1996, the plaintiffs assigned to Cavallaro "without recourse, all of their right, title and interest" in the stipulation of judgment dated February 14, 1996, but "reserving all rights against [Cavallaro]." On April 11, 1996, the plaintiff filed a withdrawal providing that judgment has entered against Condon and Cavallaro and that the plaintiffs' action is withdrawn. CT Page 12408
On January 11, 1996, prior to the execution of the judgment, the release and the assignment, Cavallaro and the plaintiff entered into a stipulation of settlement (the settlement). The settlement was sealed by the court on April 23, 1996, DeMayo, J., and unsealed by the court, Meadow, J., on June 6, 1997. In the settlement the plaintiffs claim damages of $750,000, arising out of a lease between the plaintiffs as lessors, excluding Norwich Auto, and Cavallaro, as lessee and a promissory note from Metro to Norwich Auto of which Cavallaro is an unconditional guarantor. The settlement provides that Cavallaro stipulates that judgment may enter against him in the amount of $375,000 "on the express condition that the Plaintiffs take their claims against Condon to Judgment and assign the Judgment to Cavallaro." In return for the assignment of the judgment against Condon, Cavallaro agreed to the following: 1) As of February 1, 1996, Cavallaro will transfer to the plaintiffs a promissory note from Champlin's Marina Resort and Tennis Club, Ltd., (Champlin's), in the original amount of $150,000 with a balance of $137,208.99 as of that date. The plaintiffs accept the note and agree to apply the entire principal sum to payments under the stipulation of settlement; 2) "Cavallaro will give the plaintiffs a collateral assignment of his right to receive payments pursuant to [an] `Agreement to Liquidate Partnership Interest' . . . by and between Champlin's Realty Associates Limited Partnership and [Cavallaro] which Agreement provides for payments to Cavallaro of a total of [$1,225,000] of which sum [$1,120,539] will be outstanding as of February 1, 1996." Cavallaro further agrees to "assign conditionally to the plaintiffs a certain Mortgage Deed" to secure the $1,225,000. Cavallaro also agreed to give the plaintiffs a mortgage on property located in Oxford, Connecticut, which is subject to attachment in the present case to secure the, judgment debt; 3) "Because [the Shermans] are Guarantors of [Champlin's] debt to Cavallaro, it is agreed that [the Shermans] shall have a full right of offset as to any payments due pursuant to said obligation while any portion of the Judgment Debt remains outstanding and is in default." (Emphasis in original.) The settlement further provides that the plaintiffs will accept as full payment $375,000 with full credit to be given for the assignment of the $150,000 promissory note from Champlin's plus interest. The settlement also provides that Cavallaro will market and sell the Oxford, Connecticut property and turn over to the plaintiffs the net proceeds from the sale including and up to the sum of $237,791, which together with the assignment of the promissory note in the amount of $137,208 will constitute an "Accord and Satisfaction of the judgment debt." The settlement CT Page 12409 further provides that "[i]f Cavallaro reaches a settlement with Condon that provides for monthly payments to be made by Condon, the payments being made to plaintiffs shall increase by the sum of such payments . . . Any excess remaining above the payment of interest shall be applied to the reduction of the principal of [$237,791]"
The plaintiffs, as judgment creditors, filed a property execution application dated June 26, 1996, and date stamped June 27, 1996, to be executed against Cavallaro as a judgment debtor. The application provides that $1,546.17 was paid on the account and that $373,463 remains outstanding. On August 12, 1996, Cavallaro filed a motion to vacate the property execution on the grounds that no payment is due from Cavallaro until one year from the date of the judgment pursuant to the second paragraph of article three of the stipulation of settlement dated January 11, 1996, and that the execution is defective in that the address is incorrect. It appears that the court did not rule on this motion.
The plaintiffs, as judgment creditors, filed a property execution application date July 7, 1996, and date stamped October 2, 1996, to be executed against Thomas J. Condon, Kevin W. Condon and Savitt as judgment debtors. The application provides that nothing had been paid on the account and that the total amount due was $375,010. In a letter from Cavallaro's counsel, Matthew T. Paladino, dated April 15, 1997 and date stamped April 16, 1997, Paladino avers that the property execution was returned unsatisfied. On April 16, 1997, Cavallaro and the plaintiffs filed a property execution application, dated March 1, 1997, to be executed against Thomas J. Condon, Kevin W. Condon and Savitt as a judgment debtors. Pursuant to the execution application the sheriff seized a 1994 Jeep Grand Cherokee, owned by Thomas Condon, on April 18, 1997. (Exemption Claim Form, date stamped May 7, 1997.) On May 7, 1997, Thomas Condon filed an exemption claim. The exemption claim was to be heard on May 23, 1997, and was continued to May 30, 1997, by the court, Silbert, J.
On May 7, 1997, Condon filed a motion to quash the execution and a motion for stay of execution proceedings. On June 6, 1997, the court, Meadow, J. granted Condon's motion to stay the execution for a period of thirty days and asked Cavallaro and Condon to submit memoranda of law in support of their respective positions. At the same time the court queried whether counsel for the plaintiffs had standing to cross-examine Thomas Condon. Condon and Cavallaro both filed memoranda in support of their CT Page 12410 respective positions.
DISCUSSION
Condon moves to quash the execution on the grounds of equity and fairness. In support Condon argues the following: 1) Cavallaro is not a proper assignee of the stipulated judgment nor is he entitled to enforce the stipulated judgment; 2) the property executions application issued to Cavallaro were based on "erroneous and unfair" information relative to the claimed amount of the judgment, Cavallaro's interest in the judgment and/or Cavallaro's entitlement to enforce the judgment: 3) no notice of the assignment of the stipulated judgment was given to Condon prior to Cavallaro's execution of the stipulated judgment; 4) the executions wrongly list Cavallaro as a judgment creditor and fails to list him as a judgment debtor; 5) Condon alleges that Cavallaro did not pay the full amount of the stipulated judgment, and "if he received an assignment of [the stipulated judgment] as a co-defendant/judgment debtor, [the stipulated judgment] should be considered satisfied or released as to all defendants"; 6) Condon never received a copy or notice of the assignment of the stipulated judgment and has not had an opportunity to discuss the assignment with Sherman, all to Condon's detriment.
In response Cavallaro argues that in Connecticut judgments are assignable, that as the assignor he is permitted to execute on the judgment and that there is no prohibition against a co-debtor enforcing a judgment properly assigned to it.
It is the well settled law in Connecticut that "[j]udgments are assignable. Ciulewicz v. Doyle, 172 Conn. 177, 180,374 A.2d 175 (1976) (common-law prohibition against assignments inapplicable to judgments); Newman v. Gaul, 102 Conn. 425,434-35, 129 A. 221 (1925) (assignee of a judgment may foreclose);Rogers v. Hendrick, 85 Conn. 260, 268-69, 82 A. 586 (1912) (attorney may purchase judgment and bring suit on it). A judgment is a chose in action. Hamilton v. New Haven, 82 Conn. 208, 211,73 A. 1 (1909). The assignee of a chose in action stands in the shoes of the assignor. Second Exeter Corp. v. Epstein,5 Conn. App. 427, 430, 499 A.2d 429 (1985). A valid assignment transfers to the assignee exclusive ownership of all of the assignor's rights to the subject assigned and extinguishes all of those rights in the assignor. Bouchard v. People's Bank,219 Conn. 465, 473, 594 A.2d 1 (1991). Thus, an assignee of a judgment acquires the right to collect on the judgment. CT Page 12411
"This conclusion is also supported by the Connecticut statutes governing postjudgment remedies. The General Statutes define judgment creditors as `person[s] in whose favor a money judgment was rendered, or any person[s] succeeding to such rights.' (Emphasis added.) General Statutes 52-350a(10). A person succeeds to rights when `[o]ne . . . follows another in ownership or control of property.' Bouchard v. People's Bank supra, 472."Mall v. LaBow, 33 Conn. App. 359, 362-63, 635 A.2d 871 (1993). Accordingly, Condon's argument that judgments cannot be assigned is incorrect and cannot serve as a ground for quashing the execution. "As a general rule, any person, natural or artificial, may become the assignee of a judgment." 50 C.J.S. § 619(b), citing to Rogers v. Hendrick, 85 Conn. 260, 268-69, 82 A. 586
(1912). Therefore, Condon's assertion that Cavallaro is not a proper assignee, as a matter of law, is not persuasive.
Condon also argues that the property execution applications issued to Cavallaro were based on "erroneous and unfair" information "relative to the claimed amount of the judgment, Cavallaro's interest in the judgment and/or Cavallaro's entitlement to enforce the judgment."
General Statutes § 52-356a(a)(2) provides in pertinent part that: "The property execution shall require a proper levying officer to enforce the money judgment and shall state the names and last-known addresses of the judgment creditor and judgment debtor, the court in which and the date on which the money judgment was rendered, the original amount of the money judgment and the amount due thereon, and any information which the judgment creditor considers necessary or appropriate to identify the judgment debtor . . ."
In the present case, the application for property execution dated March 1, 1997, and date stamped April 16, 1997, states the names of the judgment creditors as "Michael Cavallaro, Assignee of Robert E. Sherman, Evangeline Sherman, Evangeline Sherman, Trustee and Samuel G. Rodgers, Trustee." The application further lists the judgment debtor as "Thomas J. Condon, Kevin W. Condon, Herbert S. Savitt." The application also provides that $375,000 is owed on the judgment and that none of it has been paid.
This information accurately reflects Cavallaro's interest in and ability to enforce the judgment. The execution application, on its face, expressly and accurately provides that Cavallaro is CT Page 12412 an assignee of the judgment creditor. Furthermore, assignees are entitled to execute on the judgment because they stand in the shoes of the assignor. "[A]n assignee of a judgment acquires the right to collect on the judgment." Mall v. LaBow, supra,33 Conn. App. 363. Additionally, the claimed amount of the judgment is accurate. The stipulated judgment (the judgment) provides that judgment shall enter in the amount of $375,000, and that in the event of default the entire unpaid amount of the judgment shall be due. (Stipulated Judgment, ¶¶ 1, 5.) During trial the court heard testimony from Condon that neither he nor the other defendants paid any money to the plaintiffs pursuant to the terms of the judgment. Accordingly, pursuant to the terms of the judgment the amount now owing is $375,000, which is the amount listed on the application.[2] Accordingly, Condon's second argument is unpersuasive and is not a basis to quash or stay the execution.
Condon further argues that the assignment of the judgment to Cavallaro is invalid because no notice was given to Condon prior to Cavallaro's execution of the judgment.
"The general rule as to notice necessary to perfect an assignment of a chose in action, was stated . . . as follows: In conformity with the principles heretofore recognized in this State, and established in England as settled law, in order to perfect an assignment of a chose in action, at least as against bona fide creditors and purchasers, notice of such assignment must be given to the debtor[3] within reasonable time. Until such notice is given, the debt remains in the order and disposition of the assignor; and third persons, who may become interested in it, have no means of becoming informed of its state and situation." (Internal quotation marks omitted.) Ciezynski v.New Britain Transportation Co., 121 Conn. 36, 39, 182 A. 661
(1936). "As between the assignor and the assignee, there being nothing to show bad faith, the assignment was valid. It vested the beneficial interest in the judgment in the assignee, and it not being found that the assignment was completed by the requisite notice, the bare legal title remained in the assignor. This was held by him in the nature of a trust for the benefit of the assignee." Id., 41.
At trial the court heard testimony from Thomas Condon that neither he nor the other defendants had actual notice or received notice from the plaintiffs or Cavallaro that the judgment had been assigned to Cavallaro. At trial Thomas Condon also testified CT Page 12413 that neither he, Kevin Condon nor Savitt knew of the settlement or its terms. Accordingly, the court concludes that the judgment was assigned to Cavallaro without providing notice to Condon. A lack of notice does not invalidate the assignment to Cavallaro. However, until notice was provided to Condon the plaintiffs retain bare legal title to the judgment and Cavallaro had only the right to the benefit thereof. See Ciezynski v. New BritainTransportation Co., supra, 121 Conn. 43 (the court emphasized that where an assignment is made without notice that the assignor holds "bare legal title" and the "beneficial interest in the judgment" remains with the assignee).[4] Because the plaintiffs and Cavallaro failed to provide notice to Condon Cavallaro's claims, as assignee, against Condon are subordinate to Condon's rights and equitable claims against the assignment of the judgment. "The want of precaution of giving such reasonable notice is a neglect, on the part of the assignee, which will postpone his claims to all the rights and equities of the debtor himself, and to the subsequently acquired bona fide rights of creditors and purchasers." (Internal quotation marks omitted.)Ciezynski v. New Britain Transportation Co., supra, 121 Conn. 39. Accordingly, Condon's motion to stay the execution is granted because the plaintiffs and Cavallaro did not provide Condon with notice of the assignment. Even though this ground is dispositive of the motion to stay the execution two other arguments, raised by Condon will be discussed as they raise important legal issues.
Condon further argues that the execution should be quashed because it wrongly lists Cavallaro as a judgment creditor and fails to list him as a judgment debtor. Condon failed to cite any authority in support of this assertion. After a thorough review of the case law, the court has not uncovered any authority that expressly addresses this issue. "The assignee of a chose in action stands in the shoes of the assignor." Second Exeter Corp.v. Epstein, supra, 5 Conn. App. 430. Inasmuch as the plaintiffs were the judgment creditor, prior to the assignment of the judgment, Cavallaro, as a proper assignee, is now the judgment creditor. Furthermore, General Statutes § 52-356a(a)(2) requires that "[t]he property execution . . . shall state the names and last-known addresses of the judgment creditor and judgment debtor, the court in which and the date on which the money judgment was rendered, the original amount of the money judgment and the amount due thereon, and any information which the judgment creditor considers necessary or appropriate to identify the judgment debtor . . ." Section 52-356a(a)(2) does not require the judgment creditor to list all of the judgment CT Page 12414 debtors on the application. Only the names of those judgment debtors whom the judgment creditor is seeking to execute the judgment are necessary to a properly prepared property execution.
Condon further alleges that Cavallaro did not pay the full amount of the stipulated judgment and that he therefore cannot seek reimbursement from Condon.
Pursuant to the terms of the stipulation, Cavallaro agreed that judgment could enter against him in the amount of $375,000 on the express condition that the plaintiffs take their claims against the other defendants to judgment and assign the settlement of approximately $375,000 excluding interest.[5] The plaintiffs subsequently entered into a stipulation of judgment, which is currently in default, with all of the defendants. The total value of the judgment when in default is $375,000. There is substantially no difference between the amount the plaintiffs would have recovered pursuant to the judgment and the amount they recovered pursuant to the stipulation. While there is no evidence before the court indicating whether Cavallaro performed under the stipulation, the court concludes that the assignment that was to occur pursuant to the stipulation would be adequate consideration for the assignment of the judgment.
Condon also argues that if Cavallaro did pay the full amount of the judgment debt, that the judgment is satisfied as against all of the defendants.
"The law of judgments and satisfaction of judgments is well settled. The construction of a judgment is a question of law with the determinative factor being the intent of the court as gathered from all parts of the judgment . . . As a general rule, the court should construe [a] judgment as it would construe any document or written contract in evidence before it . . . Effect must be given to that which is clearly implied as well as to that which is expressed . . . The satisfaction of a judgment contract in evidence before it . . . Effect must be given to that which is clearly implied as well as to that which is expressed . . . The satisfaction of a judgment refers to compliance with or fulfillment of the mandate thereof . . . There is realistically no substantial difference between the words `paid' and `satisfied' in the judgment context . . . Whether the satisfaction of judgment operates to discharge the judgment in any given case also depends upon intent; specifically, the clearly expressed intention of the parties making and accepting CT Page 12415 the payment . . . The cardinal rule of interpretation is the discovery of the intent and meaning of the parties from the language used . . . As with a contract, in determining the meaning and effect of the controverted language in the satisfaction, the inquiry must focus on the intention expressed in the document and not on what intention existed in the minds of the parties . . . (Citations omitted; internal quotation marks omitted.) Mazziotto v. Allstate Insurance Company, 240 Conn. 799,806-07 (1997).
Assuming, arguendo, that Cavallaro performed pursuant to the terms of the settlement it cannot be successfully argued that payments made pursuant to that settlement were intended as an accord and satisfaction of the judgment against the within named defendants. The settlement, on its face, expressly provides that payments made pursuant to the settlement made "will constitute an Accord and Satisfaction of the entire Judgment Debt." (Stipulation of Settlement, § 3, ¶ 2.) The "Judgment Debt" is the money owed pursuant to the settlement. Moreover, the stipulation does not indicate an intent, on the part of the plaintiffs, to discharge Cavallaro of his obligation to pay on the judgment. Indeed, the plaintiffs have retained all of their rights against Cavallaro as provided in the assignment and Cavallaro expressly retained any claims pursuant to the judgment that he may have against Condon. These facts indicate to the court that Cavallaro arranged to pay the plaintiffs $375,000 to satisfy the judgment against him alone as provided in the settlement.
Condon also argues that "if [Cavallaro] received an assignment of [the judgment] as a co-defendant/judgment debtor, [the judgment] should be considered satisfied or released as to all defendants." "As a general rule, a judgment is satisfied by its assignment to the judgment debtor . . ." 50 C.J.S. § 670. "There seems to be no doubt that the assignment of a claim or a judgment to the principal judgment debtor satisfies the claim or judgment. Morley v. Stevens and Garrison, 47 How. Prac. 228;Corey v. White, 3 Barb. 12; Spies v. National City Bank, 174 N.Y. 222,66 N.E. 736, 61 L.R.A. 193." Harvey v. Harvey, 48 N.Y.S.2d 238,299 (N.Y. 1944). While this may be the general rule, a review of Connecticut case law does not indicate that Connecticut courts have embraced the proposition put forth by Condon, and this court, therefore, elects not to embrace this proposition at this time. CT Page 12416
CONCLUSION
For the foregoing reasons the court grants the motion to stay the execution pending Condon's rights and equities to challenge the assignment of the judgment to a co-debtor.
MEADOW, STATE TRIAL REFEREE.