GRAY
*v.*
COUVILLON.

---

## Eliza Toler, Administratrix, *v.* Ralph Cushman et al.

An accomodation endorser against whom, and his principal, a judgment *in solido* has been rendered, on paying the judgment becomes legally subrogated to all the rights of the creditor in a twelve months' bond given in the case by the principal obligor, and may enforce the payment of such bond by the surety therein.

APPEAL from the District Court of Avoyelles, *Ogden*, J.
*H. & S. L. Taylor*, for plaintiff and appellant. *J. H. Overton*, for defendant.

MERRICK, C. J. *Samuel W. Henarie* sold to *Daniel Clark, jr.*, a negro man named *Dave* for $750. *Clark*, to secure the price, gave his three promissory notes, endorsed by *Joel Toler*, of whose estate, the present plaintiff is administratrix. Two of the notes having matured, they were consolidated and a new note for the amount was given. On this note, judgment was rendered in March, 1841, against *Clark* and his accomodation endorser, *Joel Toler*, for $525, with ten per cent. interest from March 1st, 1841. On an execution issued upon this judgment, at a sheriff's sale of said negro man *Dave*, which was made on the 19th day of March, 1842, *Daniel Clark, jr.*, having become the purchaser, executed his twelve months' bond in favor of *Samuel W. Henarie* for $643 80, bearing ten per cent. interest from date, with *Ralph Cushman* as security.

At the maturity of the bond, an execution issued and the negro man was sold for $277, and the writ returned June 3d, 1843, unsatisfied as to the residue. In September of the same year, an execution was issued on the *judgment* against *Toler* with a credit of $187, (being the amount made on the bond less costs,) and was returned in December with a credit of $200 paid by *Toler*. On the 22d of July, 1844, an *alias fi. fa.* issued on the *twelve months' bond* against both *Clark* and *Cushman*, and was returned after a sale of the property of *Clark* under seizure, with a credit of $25 50.

The plaintiff, as administratrix of the succession of *Joel Toler*, deceased, on the 8th day of January, 1852, settled the balance of the twelve months' bond in favor of *Henarie*, amounting to $517 69, by discounting paper belonging to the succession and she took a written subrogation to the twelve months' bond against *Clark* and *Cushman*.

This suit is brought to recover the amount paid by *Toler* and his succession, from *Ralph Cushman*, and since his demise, from his succession. The judgment of the lower court was in favor of the defendant, and the plaintiff appealed.

The Defendant's counsel urges in this court the following defences to the action, viz :

*First.* That there was no payment in *money;* therefore no payment in the legal acceptation.

*Second.* That under the authority of the case of *Crow* v. *Walsh,* 3 Ann. 540, subrogation could not extend beyond the contract to which *Toler* was a party.

*Third.* If payment was made at all, it was not made at the time of the subrogation.

To arrive at a correct solution of the questions presented in this case, it will be necessary to consider the position of the parties. It is clear, from authority, that the twelve months' bond executed by *Clark* and *Cushman* did not novate and extinguish the judgment. Hence, *Toler's* estate was still bound for the debt, the original judgment, and by being bound, it had the right to pay at any time and become subrogated to the *rights, mortgages and privileges* of the creditor generally, either with or without a written act of subrogation. C. C. 3022, 3030.

The question therefore arises, is the twelve months' bond one of those *rights* to which the surety is entitled to be subrogated ? The reason to doubt, is, that the sale to the judgment debtor on a twelve months' credit under execution does not change the title to the property sold, and, since 1855, under the express statute on the subject, the surety of the judgment debtor on the bond, becomes himself subrogated to the judgment.

The Act of 1855, p. 365 sec. 4, is subsequent to the execution of the twelve months' bond and cannot be held to apply to it, and moreover, were it intended to change the rights of the parties, it would be unconstitutional as impairing the obligation of a contract. This statute must therefore be laid out of view, and the cause decided upon the principles of the laws in force at the time the obligation was entered into.

It has been settled by several decisions of this court, that the surety on the twelve months' bond executed prior to the Act of 1855, does not on payment become subrogated to the original judgment even as against the principal judgment debtor, but that on payment, he becomes legally subrogated only to the rights of the creditor upon the twelve months' bond. Had *Cushman,* the surety on the twelve months' bond, paid it, it would have at once extinguished the judgment and liberated both *Toler* and *Clark* from the same, and yet *Cushman's* only remedy would have been upon his twelve months' bond and such mortgage as might have been retained by recording the sheriff's deeds. He could have had no recourse against *Toler.* *Cushman's* estate on payment would not therefore have been in a position to claim a proportion of the amount paid on the bond from the succession of *Toler.*

On the other hand, a twelve months' bond although it does not novate the the judgment must have the effect to defer the creditor's right of payment of the original judgment until the maturity of the bond.

If the debtor's surety, although bound by the judgment *in solido* with him, has paid the debt, he at once becomes subrogated to the creditor's right to a twelve months' bond given by a third person and can enforce such twelve months' bond. Therefore a twelve months' bond made by a *third person* is a right to which the surety becomes subrogated on payment of the judgment against himself and his principal, as a security covered by the general expression in the Art. No. 3030, C. C., as a right of the creditor. Is it different

where the debtor himself makes the bond? The property of the debtor is the common pledge of all of his creditors. When the property of the judgment debtor is sold but bought in by the debtor himself under a twelve months' bond, the creditor has been to some extent deprived of this pledge; for his recourse upon it has been deferred for twelve months, and he is obliged to incur the risk of the loss of the revenues arising from his debtor's property as well as that arising from the deterioration and loss of the property itself. For this, among other things, the surety on the twelve months' bond is bound to the creditor. The twelve months' bond then becomes a further security to the creditor representing to some extent the property of the debtor. *Offut* v. *Hendley*, 9 L. R. 1; *Fenn* v. *Rils*, 9 L. R. 99; *Coons* v. *Graham*, 12 R. 206; 9 Rob. 185; 12 Rob. 206; C. P. 716.

Again, if the surety on ordinary commercial paper is entitled to the benefit of collateral paper obtained by the creditor, against the endorsers and maker, much more must the surety of the judgment debtor be entitled to treat the twelve months' bond which is executed for the sole purpose of procuring a payment of the judgment as collateral and to claim the benefit of it in the hands of the creditor. *Griffings, Administrator*, v. *Caldwell*, 16 L. R. 294.

From the best examination we have been enabled to give this question without the aid of books, we conclude, therefore, that it was in the power of *Toler's* administratrix to become subrogated to the rights of *Henarie*.

But it is said that in order that subrogation should take place there should have been a payment in money. The debt has been paid by the transfer of commercial paper and we do not think the estate of *Cushman* interested in inquiring into the mode of payment further than to ascertain that it was real and in good faith. C. C. 2625, 2146, 2134, 2135.

On the last point made by the defendant's counsel we observe that the $517 69 appears to have been arranged at the time the subrogation was given, and the settlement made on the 8th of January, 1852. But however this may be, the conclusion to which we have arrived, that the twelve months' bond was a right of the creditor, to which the surety became subrogated, on payment, will enable the plaintiff to recover.

. It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and that the plaintiff, in her said capacity, do have and recover judgment against *J. L. Degeneris*, administrator of the said succession of *Ralph Cushman*, deceased, for the sum of seven hundred and seventeen dollars and sixty-nine cents, with ten per cent. interest on the sum of four hundred and forty-three 98-100 dollars from the fourteenth day of December, 1843, until paid, and costs of both courts to be paid in the due course of administration.