HIGGINS, Justice.
 

 The holder and owner of a certain promissory negotiable chattel mortgage note instituted suit against the endorsers in due course, for value thereof, in solido.
 

 The defense is that the holder of the note, knowingly and through “extreme negligence” permitted the mortgaged chattel to be sold under a subordinate lessor’s claim and lien and intentionally did not intervene in the suit by the lessor against the maker of the note, and deliberately refrained from notifying the defendants of the seizure, thereby depriving them of an opportunity to preserve the collateral security, and as a result thereof, the mortgaged • chattel was lost and thus the holder of the note failed in its obligation and duty to protect the collateral security, so that the endorsers could be substituted thereto, upon paying the holder of the note.
 

 The plaintiff moved to strike out of the defendants’ answer the averments setting up the above plea and the trial judge ordered them stricken out. The plaintiff then moved for a judgment on the face of the pleadings and the district judge rendered judgment in favor of the plaintiff, as prayed for.
 

 The defendants appealed.
 

 The Court of Appeal held that there is no legal recognition of a motion to strike in our pleadings and practice and, therefore, the trial court had erroneously sustained it. The court, after considering the petition and the defendants’ entire answer, concluded that the defendants were primary obligors insofar as the plaintiff was concerned and that, in view of the provisions on the face and back of the note waiving presentment for payment, demand and notice of nonpayment, and agreeing to the extensions of the time of payment, without notice thereof, the holder of the note was under no duty or obligation to intervene in the suit by the lessor, and w'as not obliged to notify the endorsers in order
 
 *792
 
 that they might do so, since the “defendants do not deny that the referred to lessor’s privilege primed the chattel mortgage, nor is it alleged that the chattels’ value was in excess of the amount of rent due.” The court stated “It is inferentially said that plaintiff’s tardy action in the respect mentioned, resulted in financial loss to defendants * * * ” and “ * * * it appears that the collateral was lost to one acquiring a superior lien thereon and its diversion for the benefit of the superior lien or accomplished by forced sale.” A rehearing was refused. 12 So.2d 815.
 

 The defendants then applied to this Court for a writ of certiorari or review, which was granted.
 

 The judgment of the Court of Appeal annulling the judgment of the district court, insofar as jt sustained the plaintiff’s motion to strike out, is manifestly correct, as such procedure is foreign to our pleadings and practice. Babst v. Hartz et al.,
 
 161
 
 La. 427, 108 So. 871; State ex rel. Sutton et al. v. Caldwell, Mayor, 195 La. 507, 197 So. 214, and Stanley, Atty. Gen. v. Jones, 197 La. 627, 2 So.2d 45.
 

 The statement by the Court of Appeal that the defendants did not plead the chattel mortgage was superior in rank to the lessor’s lien and that the value of the chattel or security lost by the deliberate failure of the plaintiff to assert those rights or to notify the defendants, in order that they might do so is not borne out by the record. As ' this is a case where judgment was rendered upon the face of the pleadings, all well-pleaded allegations' of fact must be accepted as true.
 

 The petitioner alleged that it was the holder and owner, for value, before maturity, of a certain promissory note executed and signed by Lee Avenue Ice Company, through T. D. Livingston, dated Máy 15, 1940, payable to the order of the Oilfield Supply & Scrap Material Company, a commercial partnership domiciled in the City of Alexandria, Parish of Rap-ides, Louisiana, and assigned and transferred by the payee through its partners, as endorsers, to the petitioner, with recourse, in the sum of $572, payable in twelve monthly installments, on the 15th of each month, beginning June 15, 1940, and secured by a chattel mortgage and vendor’s lien; that the maker failed to pay the installment due on September 15, and under the acceleration clause, the entire balance due on the note matured; that the maker and endorsers of the noté waived presentment, demand, protest and notice of nonpayment, and the endorsers further agreed to extensions .of time of payment, without notice to them; and that the petitioner reserved all rights against the maker of the note. It prayed for judgment against the co-partnership and the individual partners; in solido, without asking for any recognition of its chattel mortgage.
 

 The defendants in their answers admitted the execution of the note by the maker and their endorsement thereof, at Alexandria, Rapides Parish, on May 15, 1940. They averred that the chattel mortgage was filed and properly recorded in the records of the office of the Recorder of Mortgages, Ouachita Parish, La., on
 
 *794
 
 May 24, 1940; that the chattel, one New Allis-Chalmers Power Unit, upon which the vendor’s lien and chattel mortgage was reserved, was delivered to the place of business of the purchaser thereof and maker of the note at Monroe, Ouachita Parish, on May 27, 1940; that the lessor of the purchaser of the machine and maker of the note seized the chattel for nonpayment of rent and had it sold during the month of October, 1940; that the petitioner had knowledge of the seizure by the lessor under a writ of fieri facias and ample opportunity to intervene and assert its rights as a holder of the chattel mortgage note and to advise the defendants, as the endorsers, in order that they might take affirmative action to protect the security; that the petitioner did not make any effort to protect the chattel and through extreme negligence and laches, permitted it to be sold without notice to the defendants, and, eight months later, informed the defendants that the chattel had been sold at public sale to satisfy the lessor’s rent, which outranked and primed the chattel mortgage; and that the defendants were relieved of their obligations as endorsers of the note, due to the holder’s extreme negligent failure to assert its rights under the chattel mortgage or to notify the endorsers, in order that they might do so, because the value of the chattel or security thereby lost was sufficient to pay the claim of the plaintiff, representing the balance due on the note.
 

 It will be noted that the chattel mortgage was executed on May 15, 1940, and recorded at the domicile and residence of the mortgagor and maker of the note in Ouachita Parish, on May 24, 1940, and that the chattel was not delivered to the purchaser’s place of business until May 27, 1940. Under our well-settled jurisprudence, a chattel mortgage, which is recorded prior to the date that the mortgaged chattel is placed in the lessor’s premises, primes the lessor’s lien. Smith et al. v. Bratsos, Allied Store Utilities Co., Intervener, La.Sup., 12 So.2d 245; Union Bldg. Corp. v. Burmeister, 186 La. 1027, 173 So. 752; Youree v. Limerick, 157 La. 39, 101 So. 864; In re Ruston Creamery, Inc., 190 La. 681, 182 So. 715, and T.L.R. Vol. 13, pages 324 and 325.
 

 In paragraph 18 of the answer, it is expressly averred that “The chattels securing the note were worth substantially the amount of the balance due petitioner herein, so that a separate appraisal and sale thereof would have resulted in full payment to this petitioner of the amounts due it as holder of the said note * * Consequently, this case cannot be considered as one where the holder of the note failed to intervene in a suit by a lessor against the mortgagor and maker of the note for rent, where the lessor’s lien primed the chattel mortgage and the mortgaged property was sold and did not bring more than enough to pay the rent.
 

 The clause in the note that “We, the makers, and endorsers of this note, hereby waive presentment, demand, protest, and notice of non-payment; and the endorsers and sureties hereto agree to extensions of the time of payment hereof without notice to them of such extensions” does not affect the negotiability of the note, is not against public policy, and
 
 *796
 
 makes the endorsers primary obligors insofar as the holder of the note is concerned, but not as to the maker thereof, as to whom, he is only secondarily liable. Bonart v. Rabito, 141 La. 970, 76 So. 166.
 

 It will be noted that • there is nothing contained in the above quoted provision, which gives the holder of the note the right to destroy, release, or knowingly or negligently permit the security for the note to be diverted or lost. The right of the endorsers to have the collateral security properly conserved and preserved was not waived by them.
 

 In the case of Interstate Trust & Banking Co. v. Young, 1914, 135 La. 465, 65 So. 611, 613, the plaintiff, as holder of the mortgage notes, instituted suit against the endorsers of the two last maturing notes of the series for the accumulated interest. The defense was that the cash portion of the price of the sale of the mortgaged property should have been imputed to the payment’of the interest and, therefore, the endorsers’ obligation was discharged. In sustaining this defense, the court said:
 

 “The case as to each of the defendants is that of an indorser of a note secured by mortgage. Now, the indorser of a note secured by mortgage has the absolute legal right to have the proceeds of the mortgaged property attributed to the payment of the note. His rights in that respect are exactly those of the holder of the note, for his promise to pay the note is conditioned upon the note being transferred to him, and upon its being so transferred not shorn of its securities, but accompanied by all of them. If the holder impair these securities, he, to that extent, loses his . recourse against the indorser. Seixas v. Gonsoulin, 40 La.Ann. 351, 4 So. 453; Millaudon v. Colla, 15 La. 213; Toler v. Cushman, 12 La.Ann. 733; Torregano v. Segura’s Syndic, 2 Mart.,N.S., [158], 161; Durac v. Ferrari, 25 La.Ann. 80; C.C. 3052, 3053, 2161; 7 Cyc. 1046; McGuire v. Wooldridge, 6 Rob. 47. * * *
 

 “While it is perfectly true, as contended by plaintiff, that these indorsers promised to pay in case Fenwick Sanitarium did not pay, it is equally true that they so promised on the condition that, if they did pay, they should be subrogated to all the rights of the holder of the indorsed notes, including, of course, among these rights the mortgage which secured the payment of the notes. * * ■* ”
 

 In Bonart v. Rabito, supra, the court held [141 La. 970, 76 So. 172]:
 

 “Although the defendant is, as to the maker of the note, only an indorser or a surety, entitled to recourse against the maker if she pays the note, nevertheless, as to the payee, she is primarily liable, in solido with the maker, as thoroughly and completely as if she had put her signature under that of the maker on the face of the note.
 

 * * * ' * *
 

 “It is said by the learned counsel for the defendant that the decision in Atkins v. Dixie Fair Co., 135 La. 622, 65 So. [762], 768, to the effect that a stipulation in a promissory note whereby the indorser waives presentment for payment, nonpayment, protest, and notice of protest, renders the indorser unconditionally liable, is based upon the decision rendered in Union
 
 *798
 
 National Bank v. Grant, 48 La.Ann. 18, 18 So. 705, where it was held merely that the indorser’s waiving demand, protest, and notice of protest at the maturity of the note did not authorize the holder of the note to release the maker, without, as a legal consequence, releasing the indorser from liability. But that decision that the waiver of presentment for payment, demand, notice of nonpayment, and protest is not in itself a consent on the part of the indorser that the maker may be released, or that time of payment may be extended without notice thereof, has no application here, where the indorser, besides waiving presentment for payment, notice" of nonpayment, and protest, also expressly consented that time of payment might be extended without noti.ce thereof.”
 

 In the case of Wyatt v. Buckley et al., Court of Appeal, Second Circuit, 1937, 174 So. 387, 388, the holder of negotiable promissory chattel notes sued the endorsers thereof and asked for recognition of their mortgage on the property. The defendants pleaded that they were discharged from liability under the endorsements, because the plaintiff, without their consent, released a sufficient amount of the mortgaged property to liquidate the notes. The court found the facts as set -up in the defense and repudiated the contention that because the endorsers were unconditionally and primarily liable that the holder of the mortgage could impair -the collateral security without discharging the endorsers. The court cited the case--of Interstate Trust & Banking Co. v. Young, et al., supra, from which we have already quoted and approved the statement of the law contained in 3 R.C.L., verbo Bills and Notes, par. 510, viz:
 

 “ ‘According to the weight of authority the indorser of a negotiable instrument is entitled to any' specific security for the payment of the debt which the principal debtor may have given the holder, or which by operation of law the latter may have acquired (e. g., a judgment lien), and if the holder releases or voluntarily destroys such security, the indorser is discharged to the extent that such specific security would have gone to pay .the debt * * * *«
 

 The court, from the evidence concluded that the amount of security released was sufficient to pay the balance due on the notes, and dismissed' the plaintiff’s suit.
 

 In the case of Auto Brokerage Co. v. Morris & Smith Auto Co., 106 Misc. 147, 174 N.Y.S. 188, the holder of a chattel mortgage note was aware of the fact that the mortgage had not been recorded and he failed to file it for recordation. The court held that the endorsers on the note were discharged through the negligence of the holder because in the interim, the maker of the note and mortgagor became bankrupt and the referee obtained the chattel free of the mortgage.
 

 In Spies v. National City Bank, 174 N.Y. 222, 66 N.E. 736, 61 L.R.A. 193, if was held that although the holder of a note had the right to enforce collection thereof from either the maker or endorser, or both, it was his legal duty to use care so as not to impair the remedy of the endorser against the maker, and, to the ex
 
 *800
 
 tent that he destroys the endorser’s rights against the maker, releases his (the holder’s) claim against the endorser. See, also, Interstate Trust & Banking Co. v. Young, supra; Canal Bank & Trust Company v. Brewer, 147 Miss. 885, 113 So. 552, 114 So. 127; Priest v. Watson, 75 Mo. 310, 42 Am.Rep. 409 and Felkner v. Smith, 77 Utah 410, 296 P. 776, 74 A.L.R. 129.
 

 In their answer, the defendants in the instant case state that the plaintiff, knowingly and intentionally or through extreme negligence failed to intervene in the lessor’s suit so as to assert superior rights under the chattel mortgage, and likewise failed to notify the endorsers, in order that they might protect the collateral, and that, if this had been done,.the value of the chattel thereby lost was sufficient to liquidate the note in full.
 

 The Court of Appeal relied mainly on the Succession of Gravolet, Court of Appeal, Parish of Orleans, 1940, 193 So. 218. In that case, the executrix of the estate of the endorser of a promissory note secured by chattel mortgage notes, pleaded that the endorser was released as a result of the holder’s failure to institute foreclosure proceedings upon her request or demand against the two mortgaged boats, which were rapidly deteriorating and because the holder allowed the mortgagors to swap an engine in one of the boats and permitted them to act as keepers thereof, after they were seized by the sheriff in the foreclosure proceedings. The court cited the Bonart v. Rabito case, supra, showing that under a clause in the note like the one in the instant case, the holder of the . note had the right to proceed against the endorsers or the securities, as he might determine. The court found that the endorser’s rights and interest were in no way prejudiced and that everything the holder of the mortgage had done was for the advantage and benefit of himself and the endorser, and that it in no way destroyed, lost, or released the collateral security, and, consequently, the endorser was not discharged. Furthermore, the executrix was fully apprised of the situation and could have paid the holder and instituted foreclosure proceedings sooner, if she had desired or elected to do so. The case is, therefore, not in point here where the facts set forth in the answer must be taken as true, showing that the holder of the chattel mortgage note, knowingly and intentionally, or through extreme negligence, permitted the collateral to be lost or diverted to a' lessor claiming under a lien subordinate in rank to the chattel mortgage.
 

 • For the reasons assigned, the judgment of the Court of Appeal is affirmed, insofar as it annuls the judgment of the district court sustaining the motion to strike out, and in all other respects, the judgment is annulled and set aside and the case is remanded to the district court for further proceedings consistent with the views herein expressed; the plaintiff to pay the costs of the Court of Appeal and of this Court, and all other costs to await the final disposition of the case.
 

 HAMITER, J., recused.
 

 ODOM, J., absent.