The plaintiff, Commercial Credit Corporation, alleges that Joseph Greco, a resident of Thibodeaux, Parish of Lafourche, State of Louisiana, and Haring-Nettles, Inc., a Louisiana corporation, domiciled and doing business in the City of New Orleans, are indebted to it in solido in the sum of $1,424.73, with legal interest from May 21, 1941, and attorneys' fees of ten per cent. The claim is based upon certain promissory notes, secured by chattel mortgages on a number of automobiles which Greco purchased from the Haring-Nettles Company, held by the plaintiff and endorsed by the Haring-Nettles Corporation.
Haring-Nettles Corporation answered admitting its endorsement of the notes sued on, but denied liability because of the loss of the security (the mortgaged automobiles), which it averred was due to the failure of the plaintiff to record the chattel mortgages in the Parish of Lafourche, the domicile of Greco, the mortgagor, until after they, or some of them, had been disposed of by Greco. It reconvened and claimed the sum of $915.79 because of its having paid this amount to the plaintiff in error as the endorser of similar paper, the security of which, (the mortgaged automobiles) was, it is averred, also allowed to disappear due to the failure of the plaintiff to record the mortgage in the Parish of Lafourche. Greco was not served with citation and made no appearance.
There was judgment below in favor of plaintiff as prayed for in the sum of $1,424.73, without the allowance of attorneys' fees because of plaintiff's failure to include same in its prayer for judgment. Defendant has appealed.
The plaintiff is a finance company which lends money on automobiles. The defendant is or was a distributor of automobiles, which it bought in quantities from the manufacturer. The purchase price was obtained from the plaintiff. In the words of E.R. Schwanner, the local manager of the plaintiff company: "The cars are purchased by Haring-Nettles, Inc. from the factory at which time we pay for them and we have chattel mortgages signed by Haring-Nettles, Inc. and place them on his floor what we call a floor plan. His dealers *Page 661 
come into his place and purchase cars and sign a chattel mortgage under a bill of sale from him and the papers are signed at his place. Where we require the distributor's endorsement, his endorsement is put on the back of the note and possibly a day or two after that we get the note in our office and examine it to see that the papers are filled out properly and if they are endorsed, if we require it, we issue our check payable to Haring-Nettles. Along with those papers, his check accompanies the papers paying for the cars which are on the floor plan under his name and we, in turn, issue our check back to him for the cars which are being sold and the documents which we received going to his dealer."
When the dealer purchasing automobiles from Haring-Nettles was not considered a good credit risk, Haring-Nettles was required to endorse his mortgage paper, which was done in this instance, since Commercial Credit was very suspicious and, as it developed, justly so, of Joseph Greco.
The mortgages which the purchasers signed were executed on printed forms furnished by the plaintiff and acknowledged by its notary public.
It is conceded that if the defendant is liable the amount allowed below is correct. It is also conceded that the security lost through the sale by Greco of mortgaged automobiles exceeds the amount claimed.
Greco was a Chrysler-Plymouth automobile dealer in Thibodeaux, Louisiana, and obtained his cars from Haring-Nettles after having mortgaged them in favor of the Commercial Credit Company. He sold his automobiles from his place of business in Thibodeaux and, under normal circumstances, paid Commercial Credit Company their mortgage note. In the present instance several of the automobiles were disposed of without the usual payment and since the mortgage had not been recorded in Lafourche Parish, the purchasers obtained good title and the mortgage security disappeared.
Section 2 of Act No. 198 of 1918, as amended by Act No. 178 of 1936 provides: "Every such mortgage (chattel mortgage) of property mentioned in Section 1 shall be in writing, setting out a full description of such property to be mortgaged, so that the same may be identified, and also stating definitely the time when the obligation shall mature. In order to affect third persons without notice both within the Parish where recorded and outside of the Parish where recorded, but within the State of Louisiana, said instrument must be passed by notarial act, or by private act duly acknowledged by one of the parties thereto, or by a subscribing witness thereto, before a notary public, and the original or a certified copy thereof shall be recorded in theoffice of the Recorder of Mortgages in the Parish where the Actof Mortgage is executed, and also at the domicile of themortgagor * * *." (Italics ours.)
It is apparent, therefore, that the failure to record the mortgage in accordance with the terms of this section of the act rendered it ineffective as to third persons. But, says counsel for plaintiff, this is not a proceeding via executiva but via ordinaria against the unconditional endorser of mortgaged paper and there is nothing in the act referred to which requires the holder of such paper, even though secured by mortgage, to record it. It is quite true that there is no requirement in the chattel mortgage act which commands its recordation anywhere, but the failure to record it results in the destruction of the security of the mortgage so far as it affects third persons and, if the mortgage in this instance, had been recorded before Greco sold the automobiles, the sales would probably not have been effected without paying the mortgage or, at least, the property could have been subjected to the mortgage in the hands of the purchaser. In other words, the loss was due to the failure to record the mortgage. Whose duty was it to record it? As we have said the form of the mortgage was prepared by the Commercial Credit Company and acknowledged before its notary as a condition for the loan of the money. It was obviously their duty to record the mortgage where the law required it to be recorded and, if they were unwilling to record it or negligent, the endorser on the note could not be required to pay, whether his endorsement was unconditional or not.
In Interstate Trust Banking Co. v. Young et al., 135 La. 465, 65 So. 611, 613, the Court said: "Now, the indorser of a note secured by mortgage has the absolute legal right to have the proceeds of the mortgaged property attributed to the payment of the note. His rights in that respect are exactly those of the holder of the note, for his promise to pay the note is conditioned upon the note being transferred to him, and upon its being so transferred not *Page 662 
shorn of its securities, but accompanied by all of them. If the holder impair these securities, he, to that extent, loses his recourse against the indorser. Seixas v. Gonsoulin, 40 La.Ann. 351, 4 So. 453; Millaudon v. Colla, 15 La. 213; Toler v. Cushman, 12 La.Ann. 733; Torregano v. Segura's Syndic, 2 Mart., N.S. [158], 161; Durac v. Ferrari, 25 La.Ann. 80; C.C. 3052, 3053, 2161; 7 Cyc. 1046; McGuire v. Woolridge, 6 Ros. 47."
In Central Savings Bank Trust Co. v. Oilfield Supply Scrap Material Co., 202 La. 787, 12 So.2d 819, 822, our Supreme Court said:
"In the case of Auto Brokerage Company v. Morris Smith Auto Co., 106 Misc. 147, 174 N.Y.S. 188, the holder of a chattel mortgage note was aware of the fact that the mortgage had not been recorded and he failed to file it for recordation. The court held that the endorsers on the note were discharged through the negligence of the holder because in the interim, the maker of the note and mortgagor became bankrupt and the referee obtained the chattel free of the mortgage.
"In Spies v. National City Bank, 174 N.Y. 222, 66 N.E. 736, 61 L.R.A. 193, it was held that although the holder of a note had the right to enforce collection thereof from either the maker or endorser, or both, it was his legal duty to use care so as not to impair the remedy of the endorser against the maker, and, to the extent that he destroys the endorser's rights against the maker, releases his (the holder's) claim against the endorser. See, also, Interstate Trust Banking Co. v. Young, supra [135 La. 465, 65 So. 611]; Canal Bank Trust Co. v. Brewer, 147 Miss. 885,113 So. 552, 114 So. 127; Priest v. Watson, 75 Mo. 310, 42 Am.Rep. 409 and Felkner v. Smith, 77 Utah 410, 296 P. 776, 74 A.L.R. 129."
The application of the authority of the cited cases to the present situation results in the conclusion that the plaintiff's case must fail since the loss of the security was due to its negligence.
The reconventional demand of the defendant in the sum of $915.79 was not pressed in argument and barely mentioned in brief of counsel. We are not certain from the record that there is sufficient evidence to support it, therefore, we will dismiss the reconventional demand as in case of non-suit.
For the reasons assigned the judgment appealed from, insofar as the main demand is concerned, is annulled, avoided and reversed, and it is now ordered that there be judgment herein in favor of the defendant, Haring-Nettles, Inc., dismissing the plaintiff's suit at its cost.
It is further ordered that the reconventional demand be dismissed as of non-suit.
Reversed.
JANVIER, J., absent, takes no part.