255 So.2d 140 (1971)
AMERICAN SECURITY BANK OF VILLE PLATTE, INC., Plaintiff-Appellant,
v.
Clyde VIDRINE and Ramson K. Vidrine, Defendants-Appellees.
No. 3520.
Court of Appeal of Louisiana, Third Circuit.
September 27, 1971.
Rehearing Denied October 27, 1971.
*142 Jules R. Ashlock, Ville Platte, for plaintiff-appellant.
J. Wendel Fusilier, of Fusilier, Pucheu & Soileau, Ville Platte, for defendants-appellees.
Before SAVOY, HOOD and CULPEPPER, JJ.
HOOD, Judge.
This is a suit on a promissory note instituted by American Security Bank of Ville Platte against Clyde Vidrine Potato Shed, Inc., Clyde Vidrine and Dr. Ramson K. Vidrine. A default judgment was rendered by the trial court on September 11, 1970, in favor of plaintiff and against Clyde Vidrine Potato Shed, Inc., for the full amount claimed. The case was then tried as to the remaining defendants, Clyde Vidrine and Dr. Ramson K. Vidrine, and judgment was rendered on February 4, 1971, in favor of those defendants rejecting plaintiff's demands against them. Plaintiff has appealed from the last mentioned judgment.
The principal issue presented is whether the note on which the suit is based has been paid.
The note sued upon was executed by Clyde Vidrine Potato Shed, and is made payable to the order of American Security Bank of Ville Platte. It is dated May 15, 1969, payable one year after date, and it is for the principal sum of $5,000.00, with interest thereon at the rate of seven percent per annum from date until paid. The note is signed: "Clyde Vidrine Potato Shed, By Clyde Vidrine," and it is endorsed in blank by defendant, "Ramson K. Vidrine, M. D."
The following notation or endorsement also appears on the back of the note: "This note to be identified with and secured by that certain special mortgage and collateral note in the principal sum of $5,000.00, dated 12-6-66," and that endorsement also was signed: "Clyde Vidrine Potato Shed, By Clyde Vidrine."
The collateral note dated December 6, 1966, referred to in the above mentioned endorsement, is for the principal sum of $5,000.00. It is payable on demand to "Holder or Holders," and it was executed by "Clyde Vidrine Potato Shed, Inc." Clyde Vidrine and Kerrell Vidrine signed as agents for that corporation. The note is paraphed for identification with an act of Special Mortgage executed before Jack C. Fruge, Notary Public, on December 6, 1966. The act of mortgage which secures the last described collateral mortgage note covers and affects two tracts of land in Evangeline Parish.
This suit is based on the $5,000.00 note hereinabove first described, being the note dated May 15, 1969. That note is referred to by the parties as a "hand note." Although the hand note is not paraphed to identify it with a mortgage, plaintiff alleges that by virtue of the endorsement appearing on the back of the note it is secured by the 1966 collateral note and special mortgage. Plaintiff demands judgment against all defendants, in solido, for the full amount of principal, interest and attorney's fees provided on the face of the hand note, with recognition of plaintiff's special mortgage on the two tracts of land described in the mortgage. The judgment which was rendered on September 11, 1970, in favor of *143 plaintiff and against Clyde Vidrine Potato Shed, Inc., is for the face amount of the note, plus interest and attorney's fees, and it recognizes plaintiff's special lien and mortgage on the two tracts of land described in the mortgage.
The hand note dated May 15, 1969, was executed by Clyde Vidrine Potato Shed, Inc., as a renewal of a prior indebtedness which that corporation owed to plaintiff. Initially, a loan of $5,000.00 was made to that corporation by plaintiff on December 9, 1966, and that loan was secured by the above described mortgage note. On January 7, 1967, one of the two mortgaged tracts of land was sold by the potato shed corporation for $2,000.00, and some time thereafter plaintiff bank authorized the release and cancellation of the mortgage insofar as it affected the tract of land which was sold.
The original note given by the potato shed corporation in December, 1966, was not paid when due, and thereafter renewal "hand notes" were executed by the corporation from time to time to evidence the remaining indebtedness. Some payments were made on the notes, and some additional advances were made by plaintiff bank. On May 15, 1969, the indebtedness of the potato shed corporation to the bank was $5,000.00, and on that date the corporation executed the hand note on which this suit is based to evidence that indebtedness. To insure the payment of that hand note, the bank required that the note be endorsed in blank by defendant, Dr. Ramson K. Vidrine, and that the 1966 collateral mortgage note be pledged as security for it. The mortgage, of course, had been cancelled insofar as it affected one of the tracts of land therein described, but no endorsement or notation of any kind appeared on the mortgage note showing that such a partial cancellation had been made.
On December 30, 1970, after the September 11, 1970, default judgment against Clyde Vidrine Potato Shed, Inc., had been rendered, the remaining tract of land which had been mortgaged to secure that indebtedness was sold under a writ of fieri facias. That tract was purchased for $800.00, and the net proceeds of that sale, amounting to $614.35, was applied to the payment of the judgment.
While Clyde Vidrine Potato Shed, Inc., was indebted to plaintiff bank, that bank also made separate loans to the following borrowers: (1) Dr. Ramson K. Vidrine, individually; (2) Kerrell Vidrine; (3) Kerrell Vidrine & Sons, Inc.; and (4) Ramson, Kerrell and Clyde Vidrine, and Don McDaniel.
In December, 1969, the corporation known as Kerrell Vidrine & Sons, Inc., agreed to sell some land to Clyde Vidrine. In order that a clear title to the land could be conveyed, Mr. Jack Fruge, an attorney in Ville Platte, Louisiana, was employed by the interested parties to contact all creditors who held mortgages on property belonging to Kerrell Vidrine & Sons, Inc., and to see that these mortgages were paid and cancelled. Mr. Fruge testified that "Kerrell Vidrine & Sons, Inc., owed quite a bit of money on that property and other debts," and that he "was requested to contact all the creditors that had mortgages on the property which belonged to Kerrell Vidrine & Sons, Inc."
Mr. Fruge then, in February, 1970, contacted Mr. Jessie Johnson, the executive vice president of plaintiff bank, requesting that he be informed as to the amount of the indebtedness owed by: (1) Dr. Ramson K. Vidrine, individually; (2) Kerrell Vidrine & Sons, Inc; (3) Clyde Vidrine; and (4) Kerrell Vidrine. He also asked for the amount due on "any notes that Dr. Ramson Vidrine had endorsed on behalf of these * * * of the corporation and Kerrell and Clyde." In response to this request, the vice president of plaintiff bank informed Mr. Fruge that as of March 2, 1970, the indebtedness of the above named parties amounted to the principal sum of $66,179.99, plus interest of $5,816.03, making a total of $71,996.02. Mr. Fruge thereupon *144 presented to the bank his check for $71,996.02, as payment of that indebtedness. Upon receipt of that check, the bank handed to Mr. Fruge five hand notes, representing obligations owed by the above named parties. The bank, however, did not hand to Mr. Fruge either of the two notes which had been executed by Clyde Vidrine Potato Shed, Inc., and which form the basis for this suit. The two notes which were retained by the bank were the $5,000.00 hand note dated May 15, 1969, and the $5,000.00 mortgage note dated December 6, 1966.
Defendants contend that the payment made by Mr. Fruge satisfied the indebtedness of all of the above named parties, including that of Clyde Vidrine Potato Shed, Inc., and the indebtedness owed by Dr. Vidrine as the endorser of the notes of that corporation. Plaintiff contends that the payment made by Mr. Fruge did not satisfy the indebtedness due by the potato shed corporation, that Mr. Fruge never requested any information as to the indebtedness of that corporation, and that the parties did not intend for the payment made on March 2, 1970, to extinguish the indebtedness of Clyde Vidrine Potato Shed, Inc., or the liability of Dr. Ramson Vidrine as endorser on any note other than the ones specifically requested by Mr. Jack Fruge.
The trial judge concluded that defendant Clyde Vidrine had executed the notes on which this suit is based solely as president or agent of Clyde Vidrine Potato Shed, Inc., and that he is not personally liable for any indebtedness of that corporation. Judgment thus was rendered rejecting plaintiff's demands against that defendant. The court also concluded that the total obligation of the defendants, including Clyde Vidrine Potato Shed, Inc., and Dr. Ramson K. Vidrine, as endorser of the notes here at issue, amounted to the sum of $71,996.02, and that the debts of all said parties to plaintiff bank were extinguished by the payment made on March 2, 1970. Judgment thus was rendered rejecting plaintiff's demands as to Dr. Ramson K. Vidrine.
We agree with the trial judge that Clyde Vidrine signed the note on which this suit is based solely as an officer of and as agent for Clyde Vidrine Potato Shed, Inc., and that Clyde Vidrine thus is not personally liable for the indebtedness represented by those notes. For these reasons we affirm that part of the judgment appealed from which dismisses the suit as to defendant Clyde Vidrine.
We are unable to agree with the trial judge, however, that the payment made to plaintiff bank on March 2, 1970, extinguished the indebtedness of Clyde Vidrine Potato Shed, Inc., to that bank, or that it extinguished the indebtedness of Dr. Ramson K. Vidrine as the endorser of the notes of that corporation.
We have concluded that the payment made to plaintiff bank on March 2, 1970, was intended to pay and extinguish only the following obligations, all of which were evidenced by promissory notes, to-wit:

(1) The indebtedness of Kerrell Vidrine
 & Sons, Inc., to plaintiff bank, in
 the principal sum of $61,379.99,
 plus interest of $5,792.70, $67,172.69
(2) The indebtedness of Kerrell Vidrine
 & Sons, Inc., to American Bank &
 Trust Company of Baton Rouge, in
 the principal sum of $4,800.00 plus
 interest of $23.33, 4,823.33
 __________
 TOTAL ................................ $71,996.02

Among other documents which were introduced in evidence were records of the plaintiff bank called "Line Cards." These records show that although Dr. Ramson K. Vidrine had borrowed sums of money from plaintiff bank from time to time, he was not personally indebted to that bank for any amount on March 2, 1970, when the indebtedness of Kerrell Vidrine & Sons was paid.
The bank records show that Kerrell Vidrine & Sons, Inc., was indebted to plaintiff bank for various amounts from December, 1966, until that indebtedness was paid in *145 full on March 2, 1970. Immediately prior to September 26, 1969, Kerrell Vidrine & Sons owed plaintiff $60,179.99. On that date plaintiff loaned the corporation the additional sum of $6,000.00, increasing the indebtedness of that corporation to $66,179.99. This additional $6,000.00 loan was evidenced by a separate note. On February 5, 1970, plaintiff sold an 80 percent interest in that $6,000.00 note (or a $4,800.00 interest) to American Bank and Trust Company of Baton Rouge. When this last mentioned transaction was completed, an entry was made on the books of plaintiff bank showing that a $4,800.00 credit was applied to the account of Kerrell Vidrine & Sons, reducing that account to $61,339.99. Plaintiff kept the $6,000.00 note in its possession, even though the Baton Rouge bank was participating in the loan, and plaintiff served as the collecting agent for the participating bank. When the debts of Kerrell Vidrine & Sons were paid on March 2, 1970, plaintiff collected the portion of the $6,000.00 note which was due the Baton Rouge participating bank, as well as the portion which was due plaintiff, and out of that payment it promptly credited $4,823.33 to the Baton Rouge bank, as payment in full of that bank's participating interest in the note.
Kerrell Vidrine & Sons had made no payments on the $6,000.00 note, and immediately prior to March 2, 1970, it owed the full amount of that note, including the portion which had been assigned to the Baton Rouge bank. The parties were endeavoring to pay all of the debts owed by that corporation, and we assume that they intended to pay the entire amount of this $6,000.00 note, even though the Baton Rouge bank had a participating interest in it.
It was not necessary for the parties to pay the debts of Clyde Vidrine Potato Shed, Inc., in order to complete the land sale from Kerrell Vidrine & Sons to Clyde Vidrine. The potato shed corporation was an entirely separate legal entity from any of the parties to the pending sale, and that corporation had never had any interest in the property which was being sold. There thus was no reason for the debts of the potato shed corporation to be cleared up before the sale from Kerrell Vidrine & Sons to Clyde Vidrine could be completed. The attorney employed by the parties made it clear in his testimony that he did not ask plaintiff bank for any information as to the debts owed by the potato shed corporation. This attorney, Mr. Fruge, testified:
"Q: Well then all of * * * but then all of these inclusions, what you wanted to pay, you never mentioned the Clyde Potato Shed note did you?
A: No, sir, I did not mention any Potato Shed."
* * * * * *
"Q: But you didn't ask them specifically to give you the Clyde Vidrine Potato Shed note?
A: No sir. I asked them specifically for notes that Dr. Vidrine might have endorsed and concerning farming operations and all notes of Kerrell, Clyde and Kerrell Vidrine and Sons, Inc."
* * * * * *
"A: I don't know anything about Clyde Vidrine Potato Shed.
Q: The Clyde Vidrine Potato Shed was not part of the Kerrell Vidrine and Sons, Inc., then?
A: Not to my knowledge."
The evidence shows that defendant Clyde Vidrine was present when payment of these notes was made to the bank on March 2, 1970, and that while that was being done neither he nor anyone else mentioned the debt owed to the bank by the potato shed corporation. No protest was made when the bank failed to turn over to defendants, or to their attorney, the potato shed corporation's notes following the payment made on that date.
The trial judge observed, correctly, that the bookkeeping procedure used by plaintiff bank is "quite complicated." He rendered *146 judgment the day after the trial was completed, and we assume that he did not have a transcript of the testimony before him when he reached the conclusion that the indebtedness of the potato shed corporation, as well as that of Kerrell Vidrine & Sons, was paid on March 2, 1970. We have had the benefit of this transcript, and we thus have had a better opportunity than the trial judge had to study and to consider the records of the bank and the purpose of the payment made on March 2, 1970.
One of the methods of discharging a negotiable instrument is by payment. LSA-R.S. 7:119. Payment, however, is an affirmative defense which must be specially pleaded and proved by the defendant. LSA-C.C.P. Art. 1005; LSA-C.C. Art. 2232; Fontenot v. Liberty Mutual Insurance Company, 230 So.2d 402 (La.App. 3 Cir. 1970); Ford v. Clark, 203 So.2d 775 (La.App. 2 Cir. 1967). We think defendants have failed to sustain that burden of proof in this case.
Our conclusion is that the indebtedness of Clyde Vidrine Potato Shed, Inc., as evidenced by the hand note given by that corporation on May 15, 1969, has not been paid, and that the parties did not intend to pay that note when the debts of Kerrell Vidrine & Sons were paid on March 2, 1970. We are convinced that plaintiff is entitled to recover the amount due on that note. Defendant, Dr. Vidrine, is liable in solido with the corporation for the amount due, since he endorsed that note.
Defendants allege and contend further that plaintiff is estopped from enforcing payment of the notes of Kerrell Vidrine & Sons, since plaintiff accepted the payment made on March 2, 1970, as full satisfaction of that indebtedness.
Equitable estoppel is defined as the effect of voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence. Calhoun v. Huffman, 217 So.2d 733 (La. App. 3 Cir. 1969). See also Ledoux v. Old Republic Life Insurance Company, 233 So.2d 731 (La.App. 3 Cir. 1970).
The general rule is that estoppels are not favored in our courts. Whenever estoppel is pleaded as an element of a cause of action, it must be pleaded specifically, and the burden of establishing the facts upon which the plea is predicated, as well as affirmatively showing that the pleader was misled and forced to act to his prejudice, rests upon the party invoking the doctrine. American Bank & Trust Company v. Trinity Universal Insurance Company, 194 So.2d 164 (La.App. 1 Cir. 1966); Shirey v. Campbell, 151 So.2d 557 (La. App. 2 Cir. 1963).
Without discussing appellant's contention that estoppel was not sufficiently pleaded, we deem it sufficient to say that the evidence does not show that defendants relied upon any conduct of plaintiff bank which might be construed as indicating that the note in question was paid, or that defendants ever changed their position in reliance upon any such conduct by the bank. The plea of estoppel thus must be denied.
Finally, defendant Dr. Ramson K. Vidrine contends that his indebtedness on the note should be reduced by $2,000.00, that being the value of the tract of land mortgaged to secure the principal indebtedness, which tract was released from the mortgage by plaintiff bank without Dr. Vidrine's knowledge or consent.
The endorser of a negotiable instrument is entitled to the protection afforded him by any specific security for payment of the debt which the principal debtor may *147 have given the holder, or which the holder may have acquired by application of law, and if the holder releases or voluntarily destroys any part of such security, the endorser is discharged to the extent that such specific security would have gone to pay the debt. Central Savings Bank & Trust Company v. Oilfield Supply & Scrap Material Company, 202 La. 787, 12 So.2d 819 (1943). See also Glass v. McLendon, 66 So.2d 369 (La.App. 2 Cir. 1953), and the numerous authorities cited therein.
The release pleaded by defendant constitutes an affirmative defense, and the burden rests on defendant to prove the facts needed to support that defense. LSA-C.C.P. art. 1005 (and comments); Pioneer Bank & Trust Company v. Foggin, 177 So.2d 131 (La.App. 2 Cir. 1965).
The evidence shows that plaintiff consented to the cancellation of the special mortgage dated December 6, 1966, insofar as that mortgage affected one of the two tracts of land therein described. This was done without the knowledge or consent of defendant Dr. Vidrine, who was an endorser on the note which evidenced the principal indebtedness. The property so released from the mortgage obviously had a value of $2,000.00, since it was sold for that amount by the mortgagor shortly before the release was authorized. The record indicates that Dr. Vidrine, the surety or endorser on the note, was not aware of the release of this security. We think defendant Dr. Vidrine is entitled to a credit for the value of this tract of land which was released from the effect of the mortgage. The evidence indicates that this partial release of security was authorized on or before the renewal hand note was executed on May 15, 1969.
Defendant also is entitled to a credit of $614.35, paid on December 30, 1970, representing the net proceeds from the sheriff's sale of the remaining tract of land mortgaged to secure this indebtedness.
For the reasons herein set out, we affirm that part of the judgment appealed from which rejects the demands of plaintiff against defendant Clyde Vidrine and dismisses the suit as to that defendant. The judgment of the district court is reversed, however, insofar as it rejects plaintiff's demands against defendant Dr. Ramson K. Vidrine. Judgment is hereby rendered in favor of plaintiff, American Security Bank of Ville Platte, and against defendant, Dr. Ramson K. Vidrine, for the principal sum of $5,000.00, with interest thereon at the rate of seven percent per annum from May 15, 1969, until paid, and 331/3 percent additional on the amount of unpaid principal and interest as attorney's fees, and for all costs of these proceedings, subject, however, to a credit of $2,000.00 to be applied as of May 15, 1969, and a credit of $614.35 paid on December 30, 1970. The costs of this appeal are assessed to defendant, Dr. Ramson K. Vidrine.
Affirmed in part, reversed in part, and rendered.