WATSON, Judge
(dissenting).
I respectfully disagree with the majority’s affirmance of the judgment by the trial court releasing defendant Willis from his endorsement.
Pertinent to consideration of the validity of the pledge of the mobile homes is the fact that the plaintiff bank had constructive possession, holding the manufacturers’ certificates of origin, pledge agreements and custodian’s receipts for the mobile homes. J. Ferdie Hebert, who was executive vice-president of the New Iberia National Bank at the time of the transaction in question and handled the matter, testified that it was not customary for the bank to have physical possession or custody of trailers pledged on notes but rather to have possession of the certificates of origin. He also testified that the loan in question would not have been made without defendant Willis’ endorsement.
*639 The statement in the majority opinion that the trial court found the bank to have an invalid pledge is incorrect. The judgment of the trial court specifically recognized the pledge. Only as to defendant Willis did the trial court find the pledge invalid, an inconsistent holding.
Willis admitted that he made no inquiry as to whether or not the bank had possession of the trailers. However, he claimed that the fact that the trailers were listed on the note as pledged to the bank gave him the impression that they were in the custody and control of the bank and that this constituted a misrepresentation on the part of the bank.
Defendant Willis contends that he was duped by the plaintiff bank. In other words, he contends that the bank led him to believe that it had a valid legal pledge on the eight mobile homes (actually he contends that the bank led him to believe the bank had the homes in its possession), whereas there was no valid legal pledge.
The record is replete with testimony which indicates that Willis knew as much about the mobile home dealer’s operations as did the bank. The record simply does not substantiate Willis’ contention that the bank misrepresented the situation and that Willis relied on these misrepresentations to his detriment. I view the trial judge’s conclusions as manifestly erroneous, lacking any reasonable evidentiary basis.
In fact, Willis was involved with Winston Teeter, president of Teeter Mobile Home Sales, Inc., in business transactions, acquiring the stock of a corporation known as Teeter Mobile Home Supplies, which subsequently sold certain property at a substantial profit.
Teeter also testified that Willis had been his attorney for a substantial period of time which indicates a knowledge of Teeter’s business and his business operations. Teeter’s testimony was as follows:
“Q: Was Mr. Willis your personal attorney during the year 1971 ?
My attorney for years — personal, business and everything else. A:
Q: And most of your corporations’ which we have discussed here today?
A: Yes, sir; and he hasn’t got paid for the last two years.” (TR. 187)
Willis’ position suggests that he was not aware that Teeter had the mobile homes and was going to keep them in order to sell them. Teeter testified as follows on this point:
“Q: Mr. Willis knew that the actual physical possession of these trailers was to be retained by Teeter Mobile Home Sales through Mr. Ackal as the custodian for the bank, correct?
A: Yes.
Q: Who was supposed to sell the trailer and turn the proceeds over to the bank?
A: Yes.
Q: Mr. Willis knew that this was the arrangement ?
A: Yes.” (TR. 197)
Willis is an experienced and able member of the bar. Considering his legal knowledge and his knowledge of the business activities of Winston Teeter and his corporations, I find no support for the contention by Willis or the conclusion by the trial court that the bank took advantage of Willis. The record reflects that Willis knew exactly the nature and extent of the security on the note, which he endorsed.
Failure to deliver the trailers to the bank did not invalidate the pledge. Not only was Willis fully cognizant of the business arrangements concerning the mobile homes, but the law does not require physical delivery. In Scott v. Corkern, 231 La. 368, 91 So.2d 569 (1956), the Supreme Court held that physical possession of the pledged *640 property by the creditor is not necessary, it being sufficient that the property be held by a trustee for the account of the creditor, as was the case here. LSA-C.C. art. 3162[1] specifically provides for «possession of the pledged property by a third person agreed on by the parties.
Willis, as an accommodation endorser, had prima facie liability on the note and had the burden of proof to show that he is not liable. LSA-R.S. 7:29, LSA-R.S. 7:63; Fontenot v. LaFleur, 281 So.2d 868 (La. App. 3 Cir. 1973), writ not considered; LSA-C.C.P. art. 1005. I believe Willis has failed to demonstrate any release of his obligation as endorser.
As to the finding by the trial court that the plaintiff bank was guilty of gross negligence in its care of the pledged property by its failure to intervene in the Rapides Parish suit, I believe this case is distinguishable from the original decision in Central Sav. Bank & Tr. Co. v. Oilfield Supply & S. Mat. Co., 202 La. 787, 12 So. 2d 819 (1943) and similar cases relied on by the trial court. There is no proof in this record that the plaintiff bank could have taken any action in Rapides Parish that would have protected its claim on the pledged property. There is conjecture to this effect but no proof.
I cannot assume negligence on the bank’s part; the record may show poor judgment or poor banking practices, but not negligence. Therefore I conclude that the trial court was in error in holding that the bank was negligent and this negligence released Willis.
Defendant Willis was notified of the foreclosure in Rapides Parish and could himself have protected his interest in the pledged, property. In fact, to the extent that it was possible, he apparently did so, filing a claim for the excess $8,000, which was seized by the State of Louisiana under a tax lien exceeding $300,000.
I believe that the trial court erred in failing to find Willis liable on the promissory note as endorser. Willis is an attorney and should have been cognizant of the terms of the note which he signed. Found on the front of the note is the following language:
“All parties hereto severally consent and agree that the property hereby pledged may be exchanged or surrendered from time to time without notice to or assent from any party hereto, and without in any manner releasing or altering their obligations hereunder.” (TR. 59)
In Chrysler Credit Corporation v. Breaux, 293 So.2d 261 (La.App. 1 Cir. 1974); writ denied, 294 So.2d 548 (La.), it was pointed out that a creditor is allowed to proceed against each solidary obligor separately for the full amount of the indebtedness. In that case, co-signers of a note claimed that they were relieved from liability for deficiency judgment when an automobile subject to a chattel mortgage secured by the note was seized and sold without notice to them. Here, as in that case, there was an appraisal of the seized property. It was held in Chrysler Credit Corporation v. Breaux, supra, that an accommodation maker on a note is not relieved of liability by appraisal and sale of the mortgaged property without notice to him.
The trial court held that Willis made only a conditional endorsement. However, there is no language in the note or in connection with defendant Willis’ endorsement which justifies such a conclusion.
I respectfully dissent.

. LSA-C.C. art. 3162.
Art. 3162. In no case does this privilege subsist on the pledge, except when the thing pledged, if it be a corporeal movable or the evidence of the credit if it be a note or other instrument under private signature, has been actually put and remained in the possession of the creditor, or of a third person agreed on by the parties.