BOUTALL, Judge.
This is an appeal by defendant endorsers from a proceeding instituted by a succession representative to obtain payment on a handnote secured by a collateral mortgage and note.
J & T Developments, Inc., through its president, Dr. Charles H. Johnson, Jr., executed a handnote in favor of Walter F. Poynot for the principal sum of $63,840.00. The note was endorsed by Johnson and William C. Terral, individually. A collateral mortgage note in the same amount and similarly endorsed was pledged to secure the loan. The mortgage identified with that note is on a building owned by J & T Developments, Inc., and was first subordinated on October 21, 1971, and then again on September 10, 1974. Thus, the Poynot mortgage is third in rank.
The defense to collection of the note was that of payment and satisfaction. Drs. Johnson and Terral testified that they were advised by Gerald G. Pfister, who managed J & T Developments, Inc., that the Poynot succession wanted to call in the mortgage, and that Pfister could arrange another loan with Cumberland Capital Corporation, the proceeds of which would be used to pay off the Poynot loan. Such loan was made from Cumberland, and the check representing the loaned capital was signed by Dr. Johnson and delivered to Pfister for payment of the Poynot loan. The check was subsequently deposited to the account of Arealco, Inc., in which Pfister had an ownership interest, and the Poynot loan was not paid out. As part of the Cumberland loan transaction, Mrs. Poynot, the succession adminis-tratrix, executed an act of subordination of the Poynot mortgage to the Cumberland mortgage, giving it third ranking.
There was judgment for plaintiff for the balance due on the Poynot note. Defendants appeal, contending that Pfister was the agent of Mrs. Poynot and the Succession of Walter F. Poynot,[1] so that payment to him of the Cumberland loan proceeds was payment and satisfaction of the debt. Alternatively, they argue that the subordination of the mortgage, of which they claim to have had no knowledge, resulted in the discharge of the endorsers to the extent that the subordination might have prejudiced them.
In written reasons for judgment, the trial judge expressly found that Pfister was not a legal representative or agent for the plaintiff in this transaction. The record fully supports this conclusion. It does reflect that Pfister and the Poynots had a close personal relationship. However, the only evidence of agency is the bald assertion of Dr. Terral to that effect in response to a leading question from his attorney.
Instead, one is compelled by the trial record to conclude that Pfister acted as agent for J & T Developments, Inc. Both Johnson and Terral stated that Pfister encouraged them to purchase the property *1054 which is the subject of the mortgage sought to be enforced. It was Pfister who had arranged for the financing, had managed the building, and, in fact, had been fully authorized to act on their behalf in all matters concerning the property. All previous payments of interest on the mortgage were made directly to Pfister. Dr. Johnson stressed that he placed much trust in Pfis-ter to attend to this business matter, as well as many others for both doctors. Whenever Pfister asked for money the doctors paid it without question as Pfister was handling all their investments. The doctor’s testimony shows his own lack of familiarity with the details of the J & T operation and that Pfister had all of his books and records. Since Pfister was the agent of J & T Developments, and not the agent of Poynot, proof of payment to him does not constitute the defense of payment and satisfaction of the debt.
In response to appellant’s contention that Drs. Johnson and Terral, as endorsers, were released from liability to the extent that they were prejudiced by Mrs. Poynot’s subordination of the mortgage,[2] the trial judge concluded that appellants had failed to show any prejudice as a result of the subordination,' citing American Security Bank of Ville Platte v. Vidrine, 255 So.2d 140 (La.App. 3rd Cir. 1971); Patterson-Redmond Equipment v. Martin, 166 So.2d 65 (La.App. 4th Cir. 1964), writ refused, 246 La. 858, 167 So.2d 673; La.R.S. 10:3-601 and La.R.S. 10:3-606, portions of the new Commercial Laws.
In American Security Bank of Ville Platte v. Vidrine, supra, one of two tracts of land subject to a mortgage securing the note sued upon had been released from the mortgage by the mortgagee. The tract had been sold for $2,000. Finding prejudice to the endorser who did not know of the release, the court awarded him a credit of $2,000 toward the default judgment due. The rule of Louisiana jurisprudence governing such cases was stated, as follows:
“The endorser of a negotiable instrument is entitled to the protection afforded him by any specific security for payment of the debt which the principal debtor may have given the holder, or which the holder may have acquired by application of law, and if the holder releases or voluntarily destroys any part of such security, the endorser is discharged to the extent that such specific security would have gone to pay the debt. Central Savings Bank & Trust Company v. Oilfield Supply & Scrap Material Company, 202 La. 787, 12 So.2d 819 (1943). See also Glass v. McLendon, 66 So.2d 369 (La. App. 2 Cir. 1953), and the numerous authorities cited therein.” Id., at 146-147.
The instant case differs from American Security Bank in two respects:
1) The mode of impairing the endorser’s rights was different, and
2) there was proof of the value of the released property in American Security Bank.
Although there is not a complete release of mortgaged property in the instant case as in American Security Bank, the subordination certainly was an impairment of the subrogation rights of the indorser.
The action of subordinating the second mortgage to the rank of third mortgage prejudiced the endorsers to the extent that the proceeds of sale of the property might be applied to satisfy the outstanding debt on the Cumberland Capital Mortgage, which became a second mortgage. The value of released collateral may be proven by testimonial evidence. See, e. g., Glass v. McLendon, 66 So.2d 369 (La.App. 2d Cir. 1953), writ denied (where the estimates of witnesses of the value sufficed to determine the amount by which the surety was prejudiced). However, in this case there is a complete failure to show the extent of any prejudice. There is no evidence of the value of the mortgaged property or of the amount of outstanding debt priming this debt. The burden of proof of prejudice is *1055 placed upon the endorsers and they have failed to carry it.
Additionally, an equally serious obstacle for the appellants to overcome is the requirement that the release of collateral be without the consent or knowledge of the endorser. Glass v. McLendon, supra; La. R.S. 10:3-606. Both Dr. Terral and Dr. Johnson deny having actual knowledge of the subordination, but the evidence shows the contrary.
The mortgage to Cumberland and the subordination were handled on the same day by the same notary public. In the Cumberland mortgage, the notary took pains to point out that the mortgage certificate showed a number of inscriptions, Items 1 and 3 being the Poynot collateral mortgage and the 1971 subordination. He then stated:
“The above collateral mortgage and subordination thereof are subordinate and inferior to the mortgage granted herein.”
Both endorsers signed this act individually along with J & T Developments, Inc. This alone impresses them with knowledge, and even more so with our conclusion that Pfis-ter acted as their agent in arranging this transaction.
The knowledge of their agent must be imputed to them, and as against the Poynot succession, they must bear the burden of loss. Bank of Louisiana v. Argonaut Ins. Co., 248 So.2d 349 (La.App. 4th Cir. 1971); Russell v. Armington, 162 So.2d 91 (La.App. 4th Cir. 1964), writ denied, 246 La. 350, 164 So.2d 352.
It seems an inescapable conclusion that despite the fact that J & T Developments, Inc. is a corporate entity separate in identity from Drs. Johnson and Terral, the doctor’s close relation to the corporation rendered Pfister their servant, too. The two doctors were the owners of the corporation. Pfister knew Dr. Johnson because the latter treated Pfister’s children. He and an accountant prepared Dr. Johnson’s personal income tax. He handled not only J & T Developments for the doctors but a number of other matters as well; as the doctors testified, whenever he asked for money they simply paid it to him to handle the business at hand and they completely trusted him. Pfister was the agent not only of J & T Developments, but also of Drs. Johnson and Terral. Therefore, Pfister’s knowledge is imputed to the endorsers, who are not discharged.
For these reasons, the judgment of the trial court is affirmed.

AFFIRMED.

. Mrs. Poynot adopted Pfister, but the act of adoption was after a petition was filed to interdict Mrs. Poynot. Those matters are still in litigation. See our opinion in Poynot v. Pfister, 348 So.2d 98, Aug. 1, 1977. (Writ refused Nov. 4, 1977)

. This allegation was raised by supplemental and amending answer after the case was submitted for decision.